## BLOOD *vs.* HUMPHREY.

Since the act of April 7, 1848, for the more effectual protection of the property of married women, where a married woman conveys her real estate) acquired since the passage of that act, the deed may be executed and acknowledged in the same manner, and be in the same form, as if she were unmarried.

She need not acknowledge the execution of the instrument on a private examination, or apart from her husband; or acknowledge that she executed the same without any fear or compulsion of her husband.

The act of April, 1848, relative to married women, and the amendment thereto of April 11, 1849, so far as they relate to future acquisitions, are not in conflict with the constitution of the United States, as impairing the obligations of the marriage contract.

Neither are those acts, so far as {future acquired property is concerned, in conflict with any provision of the state constitution.

THIS was an action of ejectment, and the following facts appeared in the case :   On the 14th day of August, 1848, Carlton Humphrey being seised in fee of the premises in question, conveyed them by deed to his daughter, Mrs. Blood, the wife of · the plaintiff.   She and her husband occupied the premises, and the plaintiff made valuable improvements upon the dwelling house, &c. and afterwards, and on the 14th day of May, 1850, Mrs. Blood reconveyed the premises by deed to her father, Carlton Humphrey.   Mrs. Blood died soon after the making of this conveyance.   The deed from Mrs. Blood to her father was in the usual form of the deed of an unmarried female, and so was the certificate of the acknowledgment of the execution. The plaintiff being in possession of the premises at the death of his wife, occupied them a while, when the defendant went into the possession by the consent of both the plaintiff and Carlton Humphrey.   Judgment was given for the defendant, at the circuit, and the plaintiff appealed.

*R. Balcom,* for the plaintiff.

*H. R. Mygatt,* for the defendant.

Blood *v.* Humphrey.

*By the Court*, MASON, J. The first question which I propose to consider in this case is, whether the deed from Mrs. Blood to her father, Carlton Humphrey, was properly executed and acknowledged, so as to convey the title of the premises in question. Mrs. Blood, although a married woman, was seised of the fee of these premises, by conveyance made to her on or about the 14th day of August, 1848. This conveyance being executed after the passage of the act for the more effectual protection of the property of married women, passed April 7, 1848, she held the same to her sole and separate use, the same as if she were a single female. (*Laws of* 1848, *chap.* 200, § 3.) On the 14th day of May, 1850, Mrs. Blood by deed conveyed these premises to her father, Carlton Humphrey. There is nothing in the deed, or in the certificate of acknowledgment, to show that she was a married woman. She does not acknowledge the execution of the deed on a private examination, or apart from her husband, or acknowledge that she executed the same without any fear or compulsion of her husband. The question presented for our decision therefore is, whether this is a good execution, under our statute. The revised statutes declare that the acknowledgment of a married woman, residing within this state, to a conveyance purporting to be executed by her, shall not be taken unless, in addition to the requisites contained in the preceding section, (which provides for general acknowledgments,) she acknowledges on a private examination, apart from her husband, that she executed such conveyance freely, and without any fear or compulsion of her husband; nor shall any estate, of any such married woman, pass by any conveyance, not so acknowledged. (1 *R. S.* 758, § 10.) By the 3d section of the act of April 7, 1848, as amended by chapter 375 of the laws of 1849, (*Laws of* 1849, *p.* 528,) any married female may take by gift, grant, devise or bequest, from any person other than her husband, and hold to her sole and separate use, and convey and devise real and personal property, &c. in the SAME MANNER, and with the like effect, as if she were unmarried. This statute declares that a married female may not only take and hold real estate, in the same manner, and with the like effect, as if she

were unmarried, but that she may convey the same, in the same manner, and with the like effect. There is no doubt, if we are to give effect to the clear and explicit language of this statute, that this is a valid acknowledgment. Only admit that when a married woman has received a grant in fee of lands, since the passage of the act of 1848, and the amendment of 1849, she may convey the same in the same manner, and with the like effect, as if she were unmarried, and the whole case is made out. This is certainly admitting no more than the statute itself declares she may do. Such I have no doubt was the design of the framers of this statute, as well from the plain and explicit language of the section under consideration, as the other provisions of the act. The legislature intended to remove the entire disability which both the common law and the statute had thrown around married women, not only as regards their right to take and hold, free and independent of their husbands; but also, to remove the obstacles which the law had interposed against their conveying both by grant and devise, and to place them, so far as the lands which they held in their own right are concerned, on the same basis, precisely, as unmarried females. The plaintiff has shown no title to the premises in question. The legal title is in the defendant, and there is nothing appearing in the case which estops the defendant from setting it up. The defendant is not more the tenant of the plaintiff than he was of Humphrey. There is nothing in the objection raised, that this act of April 7, 1848, " for the more effectual protection of the property of married women," and the amendment thereto of 1849, is in conflict with the constitution of the United States, because it impairs the obligations of the marriage contract. I examined this question in the case of *White* v. *White,* (5 *Barb.* 474,) and have seen no reason to change my opinion since. Neither does this act conflict with any provision of our state constitution, so far as the property in question is concerned; as the same was conveyed to her since the passage of that act. The legislature may qualify the wife to hold and convey property, without in any manner depriving the husband of any of his property, and without impairing any of his rights of property;

and besides, all of these relations of after acquired property are wholly dependent upon the municipal law, and do not rest in any manner upon any contract expressed or implied between the parties. (*Park on Dower*, § 5. 1 *Sandf. S. C. R.* 516, 546. 4 *Id.* 556, 561.) This latter case was affirmed in the court of appeals. The judgment should be affirmed.

[TIOGA GENERAL TERM, May 9, 1854. *Crippen, Gray, Shankland* and *Mason,* Justices.]