## NEW YORK SUPERIOR COURT.

### Caroline McIlvaine agt. John Kadel.

By the *marriage relation* the common law transferred to the *husband* all the personal property of the *wife absolutely*, and gave him the *usufruct* of all her real estate during their joint lives; and after her death, issue being born, an estate for his life.

Therefore, the *deed* of an *infant* could not be *avoided or disaffirmed* during coverture, for the reason that it might interfere with or in some way affect the marital right of the husband, or defeat the settlement—a right or interest of the husband *jure uxoris* in the property of the wife.

At common law a *feme covert* could not alien her lands by deed; she might with her husband levy a fine, or suffer a common recovery; hence it became necessary to obtain the aid of the court.

But under our statutes—1848-9, &c., an *infant feme covert* may execute a *deed of trust* of her real estate, and on arriving at majority may execute a deed of *revocation of the trust*, and thereupon convey by *deed absolutely* such real estate without joining her husband in either. Nor need her conveyance be *acknowledged* in the manner required by the Revised Statutes, respecting acknowledgments of married women.

Therefore, under these statutes, a *deed of trust* by an infant *feme covert* is probably unnecessary. The protection afforded by the law to the property of a married female is quite as effectual as it can be made by the contract of parties.

Under our statutes, the rights of *husbands* at common law, to the personal, and the use of the real property of the wife are gone; and they have no estate or interest, or right whatever, absolute or contingent, except that upon the death of the wife *after issue born*, without exercising the *jus disponendi*, he has an estate for his life as *tenant by the curtesy*.

By force of these statutes the disability of a married woman to convey her separate estate is removed; it therefore follows necessarily, that she is under no disability by reason of her coverture to disaffirm her *voidable deed of trust*, executed while an infant. The case of *Wetmore* agt. *Kissam* (3 *Bosw.* 321), commented upon and explained.

*Submission under section* 372 *of the Code of Procedure.*
*Heard December General Term,* 1865.

*Before* Moncrief, Monell *and* McCunn, *Justices.*

On the 14th of April, 1861, the plaintiff, then an infant, was married to John S. McIlvaine. On the 13th of April, 1863, while still under age, she in conjunction with her husband, executed and delivered to Charles Tracy, a deed conveying to said Tracy upon certain trusts therein named, for the sole benefit of the plaintiff, certain real estate

therein described, belonging to the *plaintiff*. The trustee accepted the trust, and entered upon his duties, and continued to act until the 20th of November, 1863. On that day the plaintiff became of age; she thereupon, again in conjunction with her husband, executed an instrument under seal, revoking and annulling the trust deed to Tracy. The plaintiff then entered upon the premises, and has since continued in possession, the trustee, ceasing to act upon the revocation of the deed to him. The plaintiff and her husband (who is living) have two children now living.

On the 19th of September, 1865, the plaintiff and defendant entered into an agreement for the sale and purchase of the premises in question. On the first of November, 1865, the plaintiff tendered to the defendant a deed of the premises, properly executed, in conformity with the agreement, which the defendant refused to receive, on the ground that the instrument of the 20th of November, 1863, was not a legal revocation of her deed, by reason of the *coverture* of the plaintiff. The plaintiff asks that the defendant may be required to perform his contract by receiving the deed tendered, and paying the consideration money therein expressed. The case was submitted on printed points, by

Mr. G. H. BREWSTER, *for plaintiff.*

Mr. J. F. CHAMBERLAIN, *for defendant.*

By the court, McCUNN, J. The question to be determined in this case is, can Mrs. McIlvaine, by and with the consent of her husband after she arrives at majority, sell and convey the property mentioned in the trust deed given to Tracy. I am clearly of opinion that she and her husband can. The only effect the trust deed had was to vest in the trustee the legal title to the property in question, subject to be divested by the wife's disaffirmance of the deed on arriving at full age. (*Bool* agt. *Mix*, 17 *Wend.* 119; *Sandford* agt. *McLean*, 3 *Paige*, 121.) The deed of

November 20th, 1863, followed by the plaintiff's entry, was an effectual disaffirmance within the most rigid meaning of the word. The chancellor in the case of *Bool* agt. *Mix*, and Chief Justice BRONSON, in the case of *Sandford* agt. *McLean*, in very learned and able opinions, dispose of the whole question involved herein. The question under consideration is not at all affected by the plaintiff's coverture. The statutes of 1848 and 1849, give her the power of a *feme sole* as to the acts in question. In disposing of the case, I do not believe it at all necessary to advert to the numerous cases (cited on both sides) arising upon a marriage settlement of female infants. The trust deed executed in this case by the plaintiff to Tracy, not being of that character, there is not the slightest shadow of an excuse for setting up such deed as a bar to any conveyance she may make after arriving at years of majority. Much discussion has taken place, and numerous cases cited in the briefs of counsel upon the point, whether a female infant can be bound by her covenant upon marriage, as to her real property, a point for which there is no room here. I do not, therefore, examine those cases, merely observing that the most eminent judges in England and in this country, such as Lords MANSFIELD, THURLOW, ELDON and others, on the one side, and Chancellors WALWORTH and HOFFMAN, and Chief Justices BRONSON and BOSWORTH, and others on this side, are of the opinion that a female infant could not be so bound, and I decidedly concur in their views.

The judgment must be for the plaintiff with costs, requiring the defendants to specifically perform the contract.

MONELL, J. The deed of Mrs. McIlvaine, the plaintiff, having been executed by her while an infant, is voidable, not void. Such, I think is the clear weight of authority. (*Roof* agt. *Stafford*, 7 *Cow.* 179; *Bool* agt. *Mix*, 17 *Wend.* 119; *Temple* agt. *Hawley*, 1 *Sand. Ch. R.* 153; *Wetmore* agt. *Kissam*, 3 *Bosw.* 321.) The instrument of November

20, 1863, was a sufficient act of avoidance, unless its execution by the plaintiff was restrained during coverture. (*Jackson* agt. *Carpenter*, 11 *J. R.* 539 ; *Jackson* agt. *Burchin*, 14 *Id.* 124.)

Independently of the statutes for the more effectual protection of the property of married women, the trust deed could not be avoided by the plaintiff during coverture. Such seems to be the preponderance of authority on the subject. (*Temple* agt. *Hawley, Wetmore* agt. *Kissam, supra ; and the cases there cited and reviewed.*) The act of 1849 (*Laws of* 1849, *p.* 528, *chap.* 375), enables a married woman to hold to her separate use, and to convey any real or personal property, and the rents, issues and profits thereof, in the same manner, and with the like effect, as if she were unmarried; and such property and rents were not subject to the disposal of her husband, nor liable for his debts. This act has been held to be constitutional and valid. (*Clark* agt. *Clark*, 24 *Barb.* 581 ; *Thurber* agt. *Townsend*, 22 *N. Y. Rep.* 517.) The effect of the statute referred to, is to deprive the husband of *all* right to, or interest in his wife's property, during her life. By the unity of persons, the common law transferred to the husband all the personal property of the wife absolutely, and gave him the *usufruct* of all her real estate during their joint lives, and after her death, issue being born, an estate for his life. The intention of the legislature was to overturn all those provisions of the common law which bestowed upon the husband the property of the wife, and confer upon the latter the unrestrained right to, and control over such property, as if the marital relation did not exist.

The reason which founded the doctrine that an infant's deed cannot be avoided during coverture was, that it might interfere with, or in some way affect the marital rights of the husband, or defeat the settlement. Lord Chancellor ELDEN says, in *Milner* agt. *Lord Harewood* (18 *Ves.* 275), that the husband being seized *jure uxoris*, would have a

McIlvaine agt. Kadel.

right to say that if she would not settle according to the agreement, that he would not give his consent; and Lord THURLOW, in *Dunford* agt. *Lane* (1 *Bro. C. C.* 115), says, if she did not when of age choose to accede to the engagement, the conscience of her husband was bound not to aid her in defeating it; and in equity, as he would not be permitted to do so, it is impossible to permit her act during coverture to be effectual. It seems, then, that the disability of the wife during coverture, was because of some estate, or right, or interest of the husband *jure uxoris*, in the property of the wife.

I have assumed that the weight of authority was against the right of disaffirmance during coverture, of real property conveyed by an infant. It seems to be equally well settled that the rule does not apply to a settlement of personal estate. (*Simpson* agt. *Jones* 2 *Russ. & Milne,* 371 ; *Temple* agt. *Hawley, Wetmore* agt. *Kissam, ubi supra.*) In settlements of personal estate, it is said that it is bound, because it would otherwise become the husband's, and, therefore, it is his settlement and not hers ; whereas the real estate of a female infant was not bound, because it does not become the absolute property of the husband, though he took a limited interest in it. The antiquity of the distinction, and the uniform concurrence of judges in it, entitles it to much weight ; otherwise it would be difficult to perceive wherein the distinction lies. In the one case the husband takes *all* the personal estate, in the other he takes all the *usufruct* of the real. During his life she is as wholly deprived of her real as of her personal estate. The end to be gained by ante nuptial settlements was, to secure the real or personal estate, or both, to her future use, with a *jus disponendi* by will. Why should a different rule be applied to these settlements? Why can one be disaffirmed during coverture, the other not ?

All the cases in the books, and there are many, are cases where the court has been invoked to aid parties in annulling

McIlvaine agt. Kadel.

their deed of settlement, and the courts have refused, for the reasons already stated. At common law a *feme covert* could not alien her lands by deed; she might with her husband levy a fine, or suffer a common recovery; hence it became necessary to obtain the aid of the court. But under our statutes the deed of a married woman is effectual to pass her interest in lands. And I will here remark in passing, that the execution of the trust deed and the instrument of revocation by the plaintiff's husband, was of no importance whatever; he had no estate or interest to convey, and her execution alone would have been sufficient (*Albany Ins. Co.* agt. *Bay*, 4 *Coms.* 9).

In the case before us, the trusts created were for the *sole* benefit of the plaintiff. No other person had any interest, beneficial or otherwise, in either the trusts or the estate. The trustee was required to collect the rents and pay them to the plaintiff; he was invested with power to sell, and upon the death of the plaintiff he was directed to dispose of the estate according to her will, or in default of a will, to the persons entitled by law to inherit from her. Under the statute referred to, this conveyance in trust was probably unnecessary. The protection afforded by the law to the property of a married female, is quite as effectual as it can be made by the contract of parties. In leaving this branch of the question, it is perhaps sufficient to say that the rules respecting the irrevocability of marriage settlements during coverture, are supported by very slight if not altogether insufficient reasons, when applied to the facts in the case before us.

The act for the *protection* of the property of married women, has worked a complete radical change in the marital rights of husbands. Their old common law right to the personal, and the use of the real is gone; and they have no estate or interest, or right whatever, absolute or contingent, except that upon the death of the wife, after issue born, without exercising the *jus disponendi*, he has

an estate for his life as *tenant by the curtesy*. (*Beamish* agt. *Hoyt, Mss. in this court; Ransom* agt. *Nichols*, 22 *N. Y. R.* 110 ; *Jaycox* agt. *Collins*, 26 *How. Pr. R.* 496.) A married woman may hold her estate during *life*, discharged of all control over, or power of disposal by her husband, and may convey it in her life time, or devise it by will, to take effect on her death, to whomsoever she pleases ; and as we have seen (*Albany Ins. Co.* agt. *Bay, supra*), her husband's consent is not necessary to render the transfer effectual, nor need her conveyance be acknowledged in the manner required by the Revised Statutes respecting acknowledgments by married women (*White* agt. *Peck*, 26 *N. Y. R.* 42).

The natural if not inevitable effect of the statute ·we are considering, is to destroy the *reason* on which the common law rule of disability during coverture was founded. None of the marital rights of the husband are invaded, nor are the courts called upon to aid in the avoidance. In respect to her separate estate the wife is a *feme sole*. There was an apparent reluctance in the courts at first, to give to the act of 1849 the wide and sweeping effect which it has since been conceded was intended by the legislature ; it was radical and startling, as it was in plain derogation of a long established common law right. The court in *Blood* agt. *Humphrey* (17 *Barb.* 662), uses this emphatic language : " The legislature intended to remove the *entire* disability which the common law and the statute had thrown around married women, not only as regards their right to take and hold, free and independent of their husbands, but also to remove the obstacles which the law had interposed against their conveying, both by grant and devise, and to place them, so far as the lands which they held in their own rights are concerned, on the same basis *precisely* as unmarried females." And COMSTOCK, J., in *Yale* agt. *Dederer* (18 *N. Y. R.*) says : " In respect to estates acquired and held under the protection of this statute, the disabilities of *coverture* would seem to be removed." I will extract but from

one opinion more.   Judge DENIO, in *White* agt. *Wager* (25 *N. Y. R.* 333), uses this language : "By assimilating the case of a wife to that of an unmarried woman, the legislature merely meant to say that she should have the same power as though she was not under the disability of coverture.   Taking away that disability, she would have power to make all such conveyances as were not forbidden by special provisions of law, but such general statutes are never understood to overreach particular prohibitions founded on special reasons of policy or convenience."

From this strong current of high judicial opinion running towards a beneficent construction of the married woman's enabling act, it is in vain for common law doctrines to contend, and however reluctantly, they must nevertheless yield.   Enough, I think, has been shown to establish the proposition that by force of the act of 1849, the disability of a married woman to convey her separate estate is removed, and it follows necessarily, it seems to me, that she is therefore under no disability by reason of her coverture, to disaffirm her voidable deed. ·

It remains to examine the case of *Wetmore* agt. *Kissam*, in this court (*supra*), which is apparently opposed to the view I have taken.   In that case an ante nuptial agreement had been executed in New Jersey, conveying the intended wife's property to a trustee.   The trusts were, to pay the income of the estate to the wife during life : upon her death, leaving her husband surviving, and no child, or the issue of any deceased child, to pay the income to her husband during life,   The wife (who was an infant when the settlement was made) on attaining her majority, without any act of disaffirmance, sought *by her action* to obtain possession of the trust estate in the hands of her trustees. Her husband was made a party defendant, but it does not appear (further than that he did not answer the complaint) that he consented to the attempted avoidance of the deed of settlement by his wife.   The learned justice (HOFFMAN)

who delivered the opinion of the court, after reviewing at much length the numerous cases touching this question, dismissed the complaint on the ground that the court would not *assist* the plaintiff to defeat her settlement. He says, the question was not whether in a court of law a deed for a valuable consideration, executed by the plaintiff and her husband, accompanied by an entry, would supercede the settlement, and pass a valid title, but whether a court of equity would upon her application, while still covert, and after the birth of issue provided for in the settlement, and when such settlement is a just and fair one, *lend its aid* to annul and cancel it. The statute of 1849 was also commented upon; and considered as not changing the common law rule; and the third section, which is in these words: " all contracts made between persons in contemplation of marriage, shall remain in full force after such marriage takes place," it was argued left the rule where it was before the statute was enacted. Yet Justice BOSWORTH freely admits that the statute has removed the reason of the rule on which settlements of personal estate made by a female infant have been upheld.

But I regard the case of *Wetmore* agt. *Kissam,* as settling nothing more than that a court of equity will not entertain a suit by a *wife* to avoid her settlement during coverture. It does not decide that she may not disaffirm it by some distinct and unequivocal act of avoidance of her own. But even if that case stood in the way, the more recent decisions in the court of appeals, to which I have referred, are broad enough to cover the views I have expressed.

I have examined and considered this case with much care. The question is new, not having been directly passed upon by any court that I am aware of, and I am brought to the conclusion, clearly and without doubt:

*First.* That the trust deed from Mrs. McIlvaine, having been executed by her while she was an infant, was voidable by her on her attaining full age; and

*Second.* That the instrument of disaffirmance executed by her, after she became of age, and her entry under it, invested her with a good and complete title to the premises in question, notwithstanding her coverture.

I concur, therefore, in the opinion that the plaintiff should have judgment with costs, requiring the defendant specifically to perform his contract.