Burke *v.* Valentine.

---

### BURKE, administrator, &c. *vs.* VALENTINE.

The estate of tenancy by the curtesy is not abolished, as to subsequently acquired property of a married woman, by the acts of the legislature of 1848 and 1849 "for the more effectual protection of the property of married women."

Those statutes have not interfered with, or taken away, the right of the husband to the personal estate, or the estate by curtesy in the real property of the wife, after her death, if not disposed of by her during life, or by will to take effect at her death.

A testator directed, by his will, that all his estate that might be left, after paying certain expenses and legacies, should remain in the hands of his executors, or under their control, for the use of his wife and children while under age; and after his youngest grand child should have arrived at the age of twenty-one years, he directed that the same should be divided among his children, share and share alike.

*Held* 1. That this provision was not void as suspending the power of alienation for more than two lives.

2. That the executors took no estate in trust. Although they were directed to convert the estate into money, and to hold and manage the proceeds, the interest and estate was in the wife and minor children.

3. That each child had a share of the property while a minor, and the estate of such child ceased on its reaching majority, and the share held by such child, thereupon vested in the other children who were minors, and the wife.

4. That a daughter of the testator, who was of full age at the time of his death, and died before the youngest child arrived at the age of twenty-one, never had such an estate in the lands of the testator, as to vest in her husband an estate as tenant by the curtesy; she having no possession, and not being entitled to any possession, under the will, until the youngest child should become of age.

Burke *v.* Valentine.

THIS action was brought by the appellant Wm. L. Burke, and others, he suing as administrator of the goods, &c. which were of his wife Margaret A. Burke, pursuant to section 9, title 5, chapter 1, part 2, Revised Statutes, (*vol.* 3, *p.* 39, *5th ed.*) to recover her share of the rents and profits of the real estate in the city of New York, whereof her father died seised, collected by the defendant William A. Valentine, who was co-tenant in common with her and the other plaintiffs, praying for a partition and an account.

John Valentine died 14th December, 1853, leaving a will dated 13th December, 1853. He left a widow, the defendant Eliza Valentine, and twelve children. His daughter, Margaret, married the plaintiff William L. Burke, 1st January, 1851, and died 8th October, 1863, intestate, having had issue which died before she did, and leaving her said husband surviving.

The testator's daughter Frances, married James Scott, and died in 1863, intestate, leaving surviving her said husband, who is one of the defendants, and two children, the infant defendants, John V. Scott and Eliza V. Scott. His other ten children are still living, including Caroline, who was the youngest at his decease, and who came of age November 25, 1865. His daughter Gulielma, and her husband are plaintiffs in the suit. All the other children and their respective husbands and wives of those who are married, together with the widow and the surviving husband and children of the daughter Frances, are defendants. By the will the testator appointed his said widow and his sons John, William A. and Gerardus, his executors. The will was proved 23d March, 1854, and the widow Eliza, and the sons John and William qualified. The will contains a residuary clause in these words: "Further, it is my will and I do order, that all my estate that may be left, after paying the above dowers and legacies when called for, shall remain in the hands of my executors, or under their control, for the use of my wife and children

while under age, and after my youngest child shall have arrived at the age of twenty-one years, my will is and I do order, that all my property that remains when the youngest child becomes of age shall be divided among my children, male and female, share and share alike, excepting the right of my wife Eliza Valentine, before mentioned."

The testator died seised of several parcels of real estate in the city of New York. The plaintiff Burke asked for partition, claiming an interest in the real estate, as tenant by the curtesy. He asked also, that the residuary clause be declared invalid and void, and claimed that as to the said real estate, the testator died intestate, and the same went at his decease to his heirs-at-law, who were entitled to the rents, issues and profits, for which the executors should account and be charged personally. The plaintiffs Brown and wife did not question the validity of the will, but asked for partition and for an account. The defendants also asked for partition, but claimed that the will was valid, and that no account could be required of the executors, except of rents accrued since the youngest child came of age.

The action was tried before a justice of this court, without a jury, who found the following facts:

1st. John Valentine, the testator named in the complaint, died December 14, 1853, seised of the premises described in the complaint, having, in his lifetime, duly made and executed his last will and testament, which was put in evidence in this action, which he left at his death unrevoked and in full force; said last will and testament was duly admitted to probate by the surrogate of the county of New York on the 23d day of March, 1854.

2d. The said testator left him surviving his widow Eliza Valentine, and the following his only children and heirs-at-law: John Valentine, William A. Valentine, Gerardus Valentine, Mary E. Valentine, Sarah J. Valentine, Margaret A. Burke, Gulielma Brown, Edward M. Valentine,

Frances L. Valentine, Helen A. Valentine, Anna F. Valentine and Caroline H. Valentine.

3d. The plaintiff William L. Burke, during the lifetime of said testator, and on the 1st day of January, 1851, married Margaret A. Valentine, one of said daughters of said testator. There were two children born alive, issue of the said marriage, both of whom died during the lifetime of the said Margaret. The said Margaret A. Burke, the wife of the plaintiff, died October 8, 1863, leaving her surviving her husband, the said plaintiff, and no children.

4th. At the time of the death of the said testator, six of his children were minors, and Caroline H. Valentine, the youngest of them, attained the age of twenty-one years in the month of November, 1865.

5th. Letters of administration upon the estate of the said Margaret A. Burke were duly issued to the plaintiff by the surrogate of the county of New York, on the 6th day of July, 1865, and remain unrevoked and in force.

6th. The rents and profits of the said real estate, described in the complaint, were since the death of said testator and prior to the majority of the said Caroline H. Valentine, his youngest child, all received by Eliza Valentine, and were collected by her or by Gerardus Valentine, who never qualified as executor, as her agent, except a small amount collected by William A. Valentine as executor, prior to the year 1856, under the directions of the will.

7th. That William A. Valentine collected no rents in his individual capacity.

And the said justice found the following conclusions of law:

1st. That the said last will and testament of John Valentine created no trust, and contains no illegal suspension or limitation of the power of alienation or distribution of the estate of said testator, or of any part thereof,

but the said will and all the provisions thereof are good and valid in law.

2d. That the widow and minor children took a legal estate in the lands described in the complaint, for the minority of the youngest child, or until her decease, if she had died before reaching her majority.

3d. Not only the lands, but also the rents and profits thereof were vested in the widow and minor children of the testator until the month of November, 1865, when the youngest child became of full age.

4th. No estate in possession was vested in the wife of the plaintiff William L. Burke before the youngest of the testator's children attained her full age.

5th. That the defendant was not liable to account in this action for the rents, issues and profits of said real estate which had been received by him.

6th. The defendant was entitled to judgment that the complaint be dismissed, with costs.

The plaintiff William L. Burke, duly excepted to the seventh and eighth findings of fact, and to all the conclusions of law above set forth, and appealed from the judgment..

*E. T. Gerry,* for the appellant. I. It was the evident intention of the testator that the estate should not be divided while any of his children were under twenty-one years of age. He expressly declares that it should remain in the hands of his executors, for the use of his wife and children while under age. He then goes on to provide that after the youngest child shall have arrived at the age of twenty-one years, the estate shall be divided. 1. The whole clause, read together, shows his intention to have been to direct a division when all his children should be of age. By his youngest child, he meant his youngest child attaining the age of twenty-one years, not the individual who happened to be the youngest child when the

Burke *v.* Valentine.

will was made. 2. By the designation "his youngest child," as used in this clause of the will, he did not mean his daughter Caroline, who was then, in fact, his youngest child; for not only he did not use her name, as he would probably have done, if he had meant her, but such a construction would not carry out his intention, as expressed in the same clause, to provide for all his minor children while under age. Caroline might have died shortly after his own decease, leaving five of his other children minors. Can any one, reading this clause of his will, suppose that he intended the division to take place, in such a contingency, before the five others were of full age? Or, as in such case she never could have come of age, would the estate be forever inalienable under the will? 3. The testator expressly states, in this will, that it was his intention to provide for his children while under age. If there is a clause in it, which, standing alone, would be susceptible of two interpretations, one of which would carry out this intention, and the other of which might defeat it, the former should prevail. 4. The construction for which the plaintiff contends, was put upon a similar provision in a will, in the case of *McSorley* v. *McSorley's executors*, (4 *Sandf. Ch.* 414.)

II. The clause in the will directing that the residuary estate shall remain in the hands and under the control of the executors, for the benefit of the testator's wife and "minor children while under age," is void as to the residuary real estate situated in the city of New York, under the provisions of the Revised Statutes prohibiting the suspension of the power of alienation of property for more than two lives in being at the creation of the estate. 1. To construe the clause in the will, that the estate shall remain in the hands of the executors, or under their control, for the use of the children of the testator while under age, would create a trust in the executors to continue until

the majority of the youngest child capable of attaining majority. (*Brewster* v. *Striker*, 2 *N. Y. Rep.* 19, 34. *Post* v. *Hover*, 30 *Barb.* 312, 321. *Vail* v. *Vail*, 7 *id.* 226.) 2. The estate, under such a trust, would be rendered inalienable until the majority of the youngest child capable of attaining majority. (*Savage* v. *Burnham*, 17 *N. Y. Rep.* 569. *Post* v. *Hover*, 30 *Barb.* 312, 321.) (*a.*) The trustees could not convey it before, because there is no power given them in the will to do so, and a conveyance, in contravention of the trust, would be void. (*Rev. Stat. part.* 2, *ch.* 1, *tit.* 2, *art.* 5, § 65. *Amory* v. *Lord*, 9 *N. Y. Rep.* 417.) (*b.*) The *cestuis que trust* could not convey the estate before. (*Rev. Stat. part.* 2, *ch.* 1, *tit.* 2, *art.* 2, §§ 60, 63.) 3. The evidence shows that there were six children of the testator under age at the time of his death. Therefore as the trust estate, attempted to be created, might have suspended the power of alienation for more than two lives in being at the creation of the estate, it is void. (*Rev. Stat. part* 2, *ch.* 1, *tit.* 1, *art.* 1, § 15. *Tayloe* v. *Gould*, 10 *Barb.* 398. *Hawley* v. *James*, 16 *Wend.* 61.) 4. The devise would not be good as a power in trust, for the same reason. (*McSorley* v. *McSorley*, 4 *Sandf. Ch.* 414.) 5. Even assuming the view of the learned justice below to be correct, " that no trust was created by the will, but that the estate was devised directly to the testator's wife and minor children, while under age," the devise would still be void, for there were six minor children, during all of whose lives, if they had died under age, the estate must have remained inalienable.

III. Assuming, for these reasons, the said devise to be void, the said real estate having been otherwise undisposed of by the will, descended, upon the decease of the testator, to his heirs at law, in fee simple, as tenants in common, subject to his widow's right of dower.

IV. The testimony shows that William A. Valentine, one of the co-tenants with the said Margaret A. Burke,

received most, if not all, of the rents and profits of the real estate described in the complaint, from 1853 to 1856.

V. The plaintiff is entitled, by statute, to an accounting of the rents and profits so received by the defendant, and to a judgment for any balance that may be found due to him upon such accounting. (*Rev. Stat. part* 2, *ch.* 1, *tit.* 5, § 9, *vol.* 3, *p.* 39, *5th ed.*)

*S. H. Thayer*, for the respondents, Gerardus Valentine and infant defendants. I. The plaintiff Burke has no interest whatever in the estate of the testator, nor any cause of action. He was married to the testator's daughter 1st January, 1851, and had issue by her, but she died 8th October, 1863, leaving no issue surviving her. The testator died 14th December, 1853. His will bears date 13th December, 1853, and was proved 23d March, 1854. Under this state of facts, Burke is not a tenant by the curtesy, and he makes no claim in any other capacity. The acts of 1848 and 1849 abolished tenancy by the curtesy, as to subsequently acquired property of a married woman. (*Laws of N. Y.* 1848, *ch.* 200, *p.* 307. *Id.* 1849, *ch.* 375, *p.* 528.) The courts have given that construction to these acts in numerous cases. (*Colvin* v. *Currier*, 22 *Barb.* 371. *Blood* v. *Humphrey*, 17 *id.* 662. *Sleight* v. *Read*, 18 *id.* 159. *Billings* v. *Baker*, 28 *id.* 343. *Benedict* v. *Seymour*, 11 *How. Pr.* 176. *Knapp* v. *Smith*, 27 *N. Y. Rep.* 279.) But, even if the laws of 1848 and 1849 had not abolished this estate, Burke would have no title. There must be an estate in possession vested in the wife during her lifetime. (4. *Kent's Com.* 29. *Pond* v. *Bergh*, 10 *Paige*, 140. In this case the legal estate went to the widow and minor children during the minority of the youngest child, or until its earlier decease. (*Lang* v. *Ropke*, 5 *Sandf.* 363. *McGowan* v. *McGowan*, 2 *Duer*, 57. 3 *Rev. Stat. 5th ed.* 15, §§ 47, 49.) Mrs. Burke, therefore, never had seisin during her life,

and there could be no tenancy by the curtesy, under the Revised Statutes, even before 1848.

II. The provisions of the will, in relation to the residuary estate, are legal and valid. There is no trust created. (3 *Rev. Stat.* 5*th ed.* 15, §§ 47, 49.) There is no illegal suspension or limitation. (*Hawley* v. *James,* 5 *Paige,* 463. *Lang* v. *Ropke,* 5 *Sandf.* 363. *McGowan* v. *McGowan,* 2 *Duer,* 57. *Doubleday* v. *Newton,* 27 *Barb.* 431. *Butler* v. *Butler,* 3 *Barb. Ch.* 304.) The legal title is in the widow and minor children till the youngest child comes of age or dies; it then goes to the descendants of the testator, in fee, subject to the widow's dower. The power of control given to the executors is only to control the collection and application of the income till the youngest child comes of age. The suspension is of the division only, and does not prevent alienation, or make void the will. (*Doubleday* v. *Newton,* 27 *Barb.* 431.) The suspension is during the minority of one individual—his youngest child. The provisions of a will are to be understood as relating to persons and things as they stood at the date of the will. This will was dated the day before the testator's death. His then youngest child was his daughter Caroline, still living, and recently come of age. She is designated as distinctly as if she were named. (*Butler* v. *Butler,* 3 *Barb. Ch.* 308.) The court will never presume that a testator purposed a limitation, which would have been illegal, when the one distinctly expressed is legal. If the language is capable of two constructions, one of which would be illegal, and the other valid, the latter should be given. (*Post* v. *Hover,* 36 *N. Y. Rep.* 593. *Du Bois* v. *Ray,* 35 *id.* 162. *Doubleday* v. *Newton,* 27 *Barb.* 440.) The courts will go even farther than this to sustain the presumed legal purpose of a testator. (*See Fowler* v. *Depau,* 26 *Barb.* 224, *and cases cited.*) But 3 *Barbour's Chancery Reports,* 304, is directly in point, and Chancellor Walworth says: " The fair construction is, *the oldest at the time the will was made,* not the oldest that

should attain twenty-one." In *Hawley* v. *James*, and many similar cases, (*Kane* v. *Gott, and Gott* v. *Cook, &c.*) the suspension was till all were of age—till the youngest, who lived to twenty-one, should attain that age—a very different case. In that very case Nelson, Ch. J. says: "The *youngest of my children*, standing alone, might well enough refer to *the youngest one of the class*, but the remainder of the clause is conclusive against this interpretation." (16 *Wend.* 119.) The case suggested by the chief justice is exactly our case.

III. The plaintiffs Brown and wife are not entitled to any account in this action. The provisions of the will being legal and valid, the rents, issues and profits accruing during the minority of the daughter Caroline, have been properly applied to the use of the widow and minor children, and the plaintiffs, being entitled to no part of them, can have no account of them. The rents, issues and profits, since the daughter Caroline came of age, have been collected by the receiver appointed by the court in this action, whose accounts will be passed before the referee, and the net proceeds divided among the widow and heirs at law.

*By the Court*, INGRAHAM, P. J.   Two questions are submitted on this appeal.

1st. Is the estate of tenancy by curtesy abolished as to subsequently acquired property of a married woman by the acts of 1848 and 1849.

2d. If not, was there such an estate vested in the wife of the plaintiff Burke, as to entitle him to an estate by curtesy after her death.

The property was devised by will in 1853, and consequently the title of the plaintiff's wife, whatever it was, was subject to the operation of those statutes.

The acts of 1848 and 1849, were intended to protect a married woman in the free use, enjoyment and disposal

of her estate for her sole separate use, and provided that such property should not be subject to the disposal of the husband, nor be liable for his debts. Neither of these statutes, in words, relate to the property or the rights of any one in the property of the wife after her death, in cases where she has not conveyed the same during coverture, or devised the same to others after her death. In such cases it is very clear the husband could have no estate by curtesy, because it would interfere with the right conferred upon her of conveying or devising the same, or any interest therein. If then this estate of tenant by the curtesy is taken away it is because it is inconsistent with the provisions of these statutes, and the intent of the legislature in passing them.

The first case on this subject is that of *Hurd* v. *Cass,* (9 *Barb.* 366,) at special term, before Justice MASON, where he holds that the statutes of 1848 and 1849 have not taken away the husband's right to the property after her death if she has not by deed or will disposed of it. The reasoning in that case is founded on the proposition that these statutes have not altered and were not intended to alter the law of descent, or for any other purpose than to protect the property of the wife during coverture and to empower her to convey by deed or devise.

In *Blood* v. *Hamphrey,* (17 *Barb.* 660,) MASON, J. held that the intent of these statutes was to place married women, so far as the lands which they held were concerned, on the same basis as unmarried females.

In *Shumway* v. *Cooper,* (16 *Barb.* 556,) it was held that these acts did not interfere with the rights of the husband after the death of the wife, if she omitted to exercise her right of disposal, and therefore left the general statute regulating the marital rights of the husband, in case of intestacy of the wife, in force.

In *Clark* v. *Clark,* (24 *Barb.* 581,) MARVIN, J. concurred with the case in 9 *Barb.* 366, and held that the statutes

under consideration did not deprive the husband of his rights as they existed previously, after the death of the wife intestate. If the legislature had intended to deprive the husband of these rights, it should have so declared expressly in the act.

*Lansing* v. *Gulick*, (26 *How. Pr.* 250,) adopts the same conclusion, and holds that the right of tenancy by the curtesy still exists, notwithstanding the acts of 1848 and 1849, subject to be defeated by the wife by any disposition of the property in her lifetime, by deed or will.

In *Jaycox* v. *Collins*, (26 *How. Pr.* 497,) the general term in the seventh district held that the estate of tenant by the curtesy, had survived the acts of 1848 and 1849. So in *Vallance* v. *Bausch*, (28 *Barb.* 633,) the general term in this district held that the right of succession to the personalty of the wife, undisposed of by her at her death, remained in the husband. It was added in that case : "I think the legislature intended to take away neither right (of succession to the personalty or of his estate as tenant by the curtesy in her undisposed of realty.)

In opposition to these cases are *Colvin* v. *Currier*, (22 *Barb.* 371,) and *Billings* v. *Baker*, (28 *id.* 343.) In the first case, Justice SMITH says : "These acts repeal the common law rule giving the husband a right to the personal estate of the wife and a freehold interest in her estate of inheritance and subjecting the same to the payment of his debts. In regard to this case, it is proper to say the point was not necessarily involved and this, therefore, is not to be regarded as authority. It is also in conflict with the case of *Jaycox* v. *Collins*, in the same district, where the question was material to the decision of the case. With this conflict of decisions in the Supreme Court, we must yield to the weight of authority which is clearly in favor of the construction which holds that the estate of a tenant by curtesy still exists, notwithstanding the passage of the married woman's acts.

We are not, however, without an expression of opinion on this question from the Court of Appeals. In *Ransom* v. *Nichols*, (22 *N. Y. Rep.* 110,) the court held that the husband has the right to recover, and enjoy as his own, personal property of a married woman after her death, which she has not disposed of. Bacon, J. says: "If she fail to make any disposition of the property by way of sale or by testamentary bequest, then the rules which always prevailed before the statutes of 1848 and 1849 were enacted, take effect, and the husband has all the rights given to him by the common law and by those provisions of the Revised Statutes which have never been repealed by these later acts.

The principle decided in this case is applicable to the one under consideration, and warrants the conclusion that the acts of 1848 and 1849 have not interfered with or taken away the right of the husband to the personal estate or the estate by curtesy in the real property of the wife after her death, if not disposed of by her either during life or by will to take effect at her death.

The second question is whether Margaret E. Burke ever had such an estate in the lands of the testator as to vest in her husband an estate as tenant by the curtesy. The wife of the plaintiff died in October, 1863. The youngest child came of age in November, 1865. It is apparent from these dates, that unless the will is declared invalid no estate in possession vested in the plaintiff's wife at any time prior to her death. She was of age when the testator died, and she died before the youngest child arrived of age. She was one of the devisees in whom was the remainder, after the death of the youngest child, but she had no possession and was entitled to no possession under the will until the happening of that event. The judge below found that the wife and minor children took a legal estate in the testator's estate during the minority of the youngest child.

Burke *v.* Valentine.

The provision of the will is "that all my estate that may be left, shall remain in the hands of my executors or under their control, for the use of my wife and children while under age, and after my youngest child shall have arrived at the age of twenty-one years, my will is, &c. that the same shall be divided among my children, share and share alike."

It is objected to this provision, that it is void as suspending the power of alienation for more than two lives. This is partly based on the supposition that the will created a trust in the executors; but I think the executors took no estate in trust. As executors, they were directed to convert the estate into money, and to hold and manage the proceeds, but the interest and estate was in the wife and minor children. Each child had a share of the property while a minor, and the estate of such child ceased on its reaching majority, and the share held by such child thereupon vested in the wife and the other children who were minors.

In *Post* v. *Hover*, (30 *Barb.* 312,) on which the plaintiff relies, the provision of the will was that the children were not to take the estate until they should severally attain the age of twenty-one years, and the court held such provision suspended the power of alienation for three lives.

The other case, of *Savage* v. *Burnham*, (17 *N. Y. Rep.* 561,) was of a similar nature. There the will created a trust in the executors to remain during the life of the widow, and during the minority of six sons and during the minority of four daughters, or until their marriage. In each of these cases, the alienation was suspended during the lives of more than two persons, by express provision in the will.

The application of the rule that where the language is capable of two constructions, one of which would be valid, and the other would make the will illegal, the former should prevail, draws the distinction between the present

case and those before referred to. And such a construction is, I think, also consistent with the intent of the testator. It is evident from the whole frame of the will that the testator never contemplated the possibility of any of his children dying before arriving at the age of twenty-one years. He made no provision for the inheriting of grand children in case of such death, nor any disposition of the share of any child in case of such an event. He selected his youngest child and made the estate to the widow and minor children limited on the minority of the youngest child. Under this construction, the limitation would be dependent on the life or minority of that child and would vest at once in all the children living when either event happened. (*Butler* v. *Butler*, 3 *Barb. Ch.* 310. *Dubois* v. *Ray*, 35 *N. Y. Rep.* 165.)

This construction of the limitation is warranted by *Hawley* v. *James*, (16 *Wend.* 119,) where Ch. J. Nelson says: "Youngest of my children and grand children standing alone, might well enough refer to the youngest of each class;" and the clause in the will in that case was held bad, because it in addition said the youngest living and attaining the age of twenty-one years, by which the intent to apply it to all the children was apparent.

The conclusions to which I have arrived on these points render it unnecessary to examine the other points made in this case as to the accounting.

Judgment affirmed.

[NEW YORK GENERAL TERM, November 2, 1868. *Ingraham, J. F. Barnard* and *Mullin*, Justices.]