HENRY W. T. STEINWAY, Appellant, *v.* CHARLES H. STEINWAY et al., as Executors of WILLIAM STEINWAY, Deceased, et al., Respondents.

1. APPEAL — INFERENCE BY APPELLATE DIVISION, WHEN CONCLUSIVE UPON COURT OF APPEALS AS A QUESTION OF FACT. An inference of fact, that a certain sum in full satisfaction of an interest in a residuary estate was accepted and a release in full given therefor, and that other acts were done and declarations showing his own support of the will and in encouragement of other beneficiaries to observe its terms were made, by a legatee with full knowledge of all the facts and presumably with full knowledge of his legal rights, or at least with knowledge that it was doubtful whether any part of the principal fund would fall into the residuary estate, and with the intention to waive any claim to anything more, may be properly drawn by the Appellate Division and will support its judgment reversing that of the court below, both upon the facts and the law, and is conclusive upon the Court of Appeals, where the evidence affords

no information that such acts of the legatee were the result of ignorance of his rights.

2. WILL — SUSPENSION OF OWNERSHIP OF PROPERTY. Absolute ownership of shares of stock given by a will is not suspended beyond two lives in being at the testator's death, but only for one life, where the will gives the shares to be held in trust until January 1, 1904, for the benefit of testator's brother, or, in case of his death prior to that date, to his children, and to pay to him, or, in case of his death, to his said children, an income from such shares, and on the date named to pay over to him, or, in case of his prior death, to his said children "or their heirs" in equal proportions the said shares or the proceeds thereof, "to have and to hold to him, her, or them, his, her, or their heirs or assigns forever;" since the word "heirs" is not to be given any more substitutionary force in respect to personal property than it has in devises of estates in land, and must here be taken to mean "next of kin." The absolute ownership of the legacy of each child vests, therefore, at the date of the brother's death, if he dies before 1904, irrespective of the child's living at that date.

3. GIFT OF CONTINGENT ESTATES IN SHARES OF STOCK — TENANCY IN COMMON. A tenancy in common, and not a joint tenancy, is created by a will which provides that on the death of testator's brother before a certain date each of his children is to take both income and principal of certain shares of stock in certain proportions, without providing for any survivorship or accumulation or expressly declaring a joint tenancy.

4. POSTPONEMENT OF VESTING OF LEGACY. Although the payment of the whole interest or income of a legacy pending delay in payment of the principal is essential to the immediate vesting of the legacy, the fact that a will provides that the income up to five per cent of a legacy of certain shares of stock shall be paid to the legatees, and any excess above that amount of income shall be retained by the trustees as compensation for their services, does not prevent the vesting of the legacy, since the five per cent is the whole net income of the *corpus* thereof.

5. POWER IN TRUST. A will giving trustees the power to manage certain shares of stock for a specified period will be construed to give them a mere power in trust, and not a title to the shares which will prevent the vesting of the shares in legatees during the period allowed by law for the suspension of ownership, although they may take an administrative title such as executors usually have to the personal property of their testator for the purposes of administration, which is good against all the world except the beneficiaries, but as to them is a mere aid and instrument to pass it forward to them in the due course of administration.

*Steinway* v. *Steinway*, 24 App. Div. 104, affirmed.

(Argued April 3, 1900; decided May 15, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 11, 1898, reversing a judgment in favor of plaintiff entered upon decision of the court on trial at Special Term, and directing final judgment for the defendants.

This action was brought to obtain a judgment declaring void a part of the will of Christian F. T. Steinway, deceased, and directing an accounting and repayment of certain income of the estate distributed thereunder.

*Wheeler H. Peckham* and *Edward B. Hill* for appellant. The clause of the will in question provides for a suspension of the absolute ownership of certain shares of stock until a definite date, and not for a period measured by lives, and it is, therefore, void. (1 R. S. 774, §§ 1, 2; *Manice* v. *Manice,* 43 N. Y. 303; *Warner* v. *Durant,* 76 N. Y. 133; *Shipman* v. *Rollins,* 98 N. Y. 311; *Smith* v. *Edwards,* 88 N. Y. 92; *Delafield* v. *Shipman,* 103 N. Y. 463; *Goebel* v. *Wolf,* 113 N. Y. 405; *Watson* v. *Hayes,* 5 M. & Cr. 125; *Matter of Hart,* 3 De G. & J. 195.) Plaintiff is not estopped from maintaining this action. (Bigelow on Estoppel [2d ed.], 437; 1 Pom. Eq. Juris. § 515; *Brewster* v. *Striker,* 2 N. Y. 19; *Chatfield* v. *Simonson,* 92 N. Y. 209; *Henshaw* v. *Bissell,* 18 Wall. 255; *Sturm* v. *Boker,* 150 U. S. 312; *Trow* v. *Shannon,* 78 N. Y. 446; *Wager* v. *Wager,* 89 N. Y. 161; *Read* v. *Williams,* 125 N. Y. 560; *Underwood* v. *Curtis,* 127 N. Y. 523.) The trusts being void, the shares went to the residuary legatees. (*Riker* v. *Cornwell,* 113 N. Y. 115; *Matter of Miner,* 146 N. Y. 121.)

*George W. Cotterill* and *John Delahunty* for respondents. The plaintiff during a period of four years, by his various acts and conduct, induced the executors to administer the estate according to the requirements of the will, and accepted its benefits and agreed in writing that the estate should be closed up as the will directed, and also in writing under seal for a consideration expressed and actually received, released the

executors from all claims and induced the beneficiaries to sub-scribe for an increase of the capital stock as owners under the will. He is, therefore, estopped and · concluded. (*Calhoun* v. *Millard*, 121 N. Y. 69; *Smith* v. *Clay*, 2 Amb. 645; *Kent* v. *Q. M. Co.*, 78 N. Y. 159; *Taylor* v. *S. & N. A. R. R. Co.*, 4 Woods [U. S.], 575; *Chipman* v. *Montgomery*, 63 N. Y. 235; *Havens* v. *Sackett*, 15 N. Y. 365; *Matter of Peaslee*, 73 Hun, 115; *Matter of Thompson*, 5 Dem. 122.) The plaintiff appellant is absolutely concluded by the family arrangement which he entered into and procured. (*Ledyard* v. *Bull*, 119 N. Y. 62; *Harvey* v. *Cooke*, 4 Russ. 58; *Persee* v. *Persee*, 7 C. & F. 279; *Herrington* v. *Lowman*, 22 App. Div. 266; *Babbitt* v. *Bowen*, 32 Vt. 437; *Weaver* v. *Roth*, 105 Penn. St. 408; *Williams* v. *Williams*, 2 D. & S. 378.) The thirty-third clause does not violate the Statute of Per-petuities, as the authority of the executors, whether it be a trust or power, is limited by the very terms of the will to the single life of each beneficiary. (*Dunlap* v. *Dunlap*, 4 Dessau, 314; *Gore* v. *Stevens*, 1 Dana, 205; 2 R. S. 66, § 52; *Kim-ball* v. *Chappel*, 27 Abb. [N. C.] 437; *Bliss* v. *Fosdick*, 76 Hun, 513; *Levy* v. *Levy*, 33 N. Y. 107.) The language of · the will generally, and the whole scope and tenor of that instrument, plainly indicates that the legacies vested in the beneficiaries distributively as tenants in common, subject only to the exercise of the power. (*Moore* v. *Lyons*, 25 Wend. 120; *Doe* v. *Considine*, 6 Wall. 458; *Harrison* v. *Harrison*, 36 N. Y. 543; *Du Bois* v. *Ray*, 35 N. Y. 165; *Post* v. *Hover*, 33 N. Y. 601; 1 R. S. 727, § 44; *Savage* v. *Burnham*, 17 N. Y. 561; *Greene* v. *Greene*, 125 N. Y. 512; *Locke* v. *F. L. & T. Co.*, 140 N. Y. 135; *Everitt* v. *Everitt*, 29 N. Y. 39.)

*Charles Oakes* for Annie Von Bodman et al., respondents. ·

LANDON, J. The trial court decided that the thirty-third clause of the last will and testament of Christian Frederick Theodore Steinway, and all other provisions of said will relat-ing to the execution of the alleged trust provided for in said

clause, were null and void, and that the four thousand shares of the capital stock of the Steinway & Sons' corporation, attempted to be disposed of in the thirty-third clause of the will, passed under the thirty-fourth clause to the plaintiff and the other residuary legatees therein named, and directed judgment accordingly. If the thirty-third clause is valid, the plaintiff's ultimate share in said capital stock would not exceed one-twelfth. If it is invalid, and the whole of said capital stock fell into the residuary estate, then his present share thereof is one-ninth. In the latter case, under the judgment of the trial court, one-half of said capital stock is vested in persons other than those to whom the testator intended to bequeath it by the thirty-third clause of his will.

The Appellate Division reversed the judgment of the Special Term both upon the law and the facts. As our review is limited by the Constitution to questions of law, we must affirm the judgment unless we find that the reversal upon the facts was an error of law. If there is evidence tending to support a finding of fact by the Appellate Division which would justify the reversal by that court, then it was not error of law to reverse upon the facts, and we must affirm. (*Livingston* v. *City of Albany,* 161 N. Y. 602.)

The Appellate Division seems to have found, and the defendants contend it might have found within the evidence, that before the commencement of this action the plaintiff, with full knowledge of all the facts, and presumably with full knowledge of his legal rights, or at least with knowledge that it was doubtful whether any part of the said capital stock fell into the residuary estate, and intending to waive any claim to more, and faithfully to observe the terms of the will, received from the executors upwards of $33,000 of the assets of the estate, other than from said stock, in full satisfaction of his interest under the residuary clause, and thereupon released under his hand and seal all claim for more. And in addition to this, that the plaintiff's acts in support of the will and in taking benefits under it, and inducing the other beneficiaries to act with him in its support, make it so inequitable for him

to maintain this action that a court of equity should refuse to assist him.

There is no conflict in the evidence. The plaintiff, however, contends that none of it tends to support the reversal upon the facts; that in the language of this court in the case cited "there are neither facts nor inferences deducible from conceded facts, in opposition to the decision of the trial court." We must determine whether this is so. The testator died March 26, 1889, possessed of the 4,000 shares of capital stock in question, of an estimated value of about one million of dollars, and of real estate and other personal property of an estimated value of about one-half million of dollars. He was a widower and never had any children. His parents were dead. His next of kin were his brother William, his sister Dorette Ziegler, and the children of his deceased sister, Wilhelmine Candidus, and of his deceased brothers, Henry, Henry Albert and Charles. By thirty-two clauses of his will he disposed of the half million of his estate absolutely and immediately among his brothers, sisters, nephews and nieces, naming them all, and a few other legatees and devisees. The terms of his will in this respect have been fully observed, and this portion of his estate has been settled and closed.

The thirty-third clause of his will is as follows:

" *Thirty-third.* I give and bequeath all my shares in the corporation of Steinway & Sons, of the city of New York, to my executors and trustees hereinafter named, in trust, to be managed by them until the first day of January in the year 1904, as follows: A. One-fourth part of such shares in the Steinway & Sons' corporation to and for the benefit of the five children of my sister Wilhelmine Candidus, late of the city of New York, deceased, viz., Louise Deppermann, wife of Gustav Deppermann, of Hamburg, Germany; Albertine S. Ziegler, wife of Henry Ziegler, of New York, and Harry Candidus, Johanne Candidus and Gustav Candidus, and to pay to them in equal proportions an annual sum representing an income of five per centum on and from such shares, and on the first day of January, 1904, to pay over in equal pro-

portions to the said five children of Wilhelmine Candidus, deceased, or their heirs, the said shares in the Steinway & Sons' corporation, or the proceeds thereof, to have and to hold to him, her or them, his, her or their heirs and assigns forever.

"The excess of the annual income of such shares in the Steinway and Sons' corporation, New York, over and above said five per centum, shall be retained by my executors and trustees hereinafter named, as their compensation for the management of such shares, and such excess annually shall be divided *pro rata* among them or their successors until January 1, 1904."

Subdivisions B and C are in the same words, except that in subdivision B the four children of his living sister, Dorette Ziegler, naming them, are the beneficiaries of the so-called trust, and in subdivision C the three sons of his deceased brother Charles, naming them, of whom the plaintiff is one, are the beneficiaries.

Subdivision D is in these words :

"D. One-fourth part of my shares in the said Steinway & Sons' corporation, to and for the benefit of my brother William Steinway, or in case of his death prior to January 1, 1904, to and for his son, George A. Steinway, his daughter, Paula Th. Steinway, and his children by his second wife, Elizabeth C. Steinway, *née* Ranft, and to pay to him, or, in case of his death, to his said children, an annual sum representing an income of five per centum on and from such shares, and on the first day of January, 1904, to pay over to my said brother William Steinway, or in case of his death prior to that date, to his said children as mentioned in this section of this my last will and testament, or their heirs, in equal proportions, the said shares in the Steinway & Sons' corporation, or the proceeds thereof, to have and to hold, to him, her or them, his, her or their heirs or assigns forever."

To which is added the same provision in the same words as to the excess of the annual income as set forth in subdivisions A, B and C.

The residuary clause of the will is in these words:

" *Thirty-fourth.* All the rest, residue and remainder of my estate, real and personal, of whatever nature and wherever situated, I give and bequeath as follows:

" A. One-third part thereof to my sister Dorette Ziegler, wife of Jacob Ziegler, of the city of New York, to have and to hold unto her, her heirs and assigns forever.

" B. One-third part thereof to my brother William Steinway, of the city of New York, to have and to hold unto him, his heirs and assigns forever.

" C. One-third part thereof to my nephews Henry W. T. Steinway (the plaintiff), Charles H. Steinway and Frederick Th. Steinway, in equal proportions, to have and to hold unto them, their heirs and assigns forever."

There was a considerable amount in the half million portion of property, to be divided under this residuary clause. Respecting this property, the plaintiff and the other residuary legatees, including the defendant William Steinway, a brother of the testator and also a devisee, and a legatee, general, specific and residuary, under his will, and one of the four executors and trustees named therein, executed an instrument bearing date April 6, 1891, which after specifying some of the items, and mentioning others as " unrealized assets and articles," proceeds : " Whereas, it is very desirable that the said estate of C. F. Theodore Steinway should be closed up and final assets distributed and paid over to the heirs at law according to the terms of the deceased's last will and testament.

" Now it is hereby agreed that all unsettled assets above referred to be hereby placed in the hands of Mr. William Steinway, one of the deceased heirs at law, to dispose of, collect, compromise according to his best judgment, with full authority from us to exercise his own discretion   *  *  * and pay over to us the net proceeds as follows ;" specifying the proportional share of each residuary legatee as provided in the will, thus: " One-ninth thereof to Henry W. T. Steinway (plaintiff), deceased's nephew," and continuing: " And we the undersigned, heirs at law of Mr. C. F. Theodore Stein-

way, deceased, hereby consent and authorize the executors of the said estate to close up same and make the final distribution to the heirs at law as directed in deceased's will, and we hereby separately bind ourselves to give a final receipt in duplicate to such executors, on receiving from them such share as provided in said will."

William Steinway executed the trust thus confided to him, and on October 6, 1891, distributed the net proceeds of the residuary estate among the said residuary legatees, the plaintiff receiving in addition to $23,000 previously paid him thereon, the sum of $10,743.09 and eleven shares of capital stock in the Matthias Gray Company, the value of which is not stated, the total making the one-ninth part due him under the residuary clause of the will, upon the half million portion of the estate. He thereupon gave the executors a release under seal, describing himself therein as " one of said testator's testamentary heirs at law inheriting one-ninth part of all the rest, residue and remainder of said estate," specifying the amounts of money and the eleven shares of stock received by him, and thus continuing, " in full payment of the principal amount of my inheritance as such heir at law, bequeathed to me in and by said last will and testament, and I hereby quitclaim to and forever release said executors and said estate from any further claim whatsoever of and by myself, my heirs, executors or administrators as such heir at law." This release recited that the executors had " kindly relinquished their commissions " in plaintiff's favor.

Up to this time the plaintiff had co-operated with the executors, legatees and devisees in settling the estate according to the terms of the will. He had accepted the income allotted to him by the thirty-third clause.

The executors and trustees were authorized by the thirty-sixth clause of the will " in their discretion to assent to or oppose any reduction or increase of the capital stock of said Steinway and Sons' corporation." In April, 1891, the trustees of the corporation decided to increase its capital stock by the addition of 5,000 shares at $100 each, to be subscribed for

by the shareholders in proportion to the stock each one held. The plaintiff subscribed and paid for 111 shares of the additional stock as the owner of 333 shares under the thirty-third clause of the testator's will, that being the one-twelfth part of the 4,000 shares of which he was therein named as beneficiary or legatee. He thus assumed that the 111 shares were vested in him. He induced several of the other beneficiaries under the thirty-third clause to subscribe in like manner for their proportions, and thus conceded that their proportions were in like manner vested. The plaintiff has since received dividends of ten per centum per annum upon the additional stock thus allotted to him.

The thirty-fifth clause of the will provides:

" In case any one of the legatees named in this my last will and testament shall not be living at the time of my death, his or her share or legacy shall form part of and pass into the bulk of my estate. This, however, shall not affect in any way the distribution of my, shares in the Steinway & Sons' corporation of New York, as provided for in the thirty-third section of this my last will and testament."

The defendants contend that the thirty-fifth clause affords evidence that the intent of the testator was that no part of the Steinway & Sons' capital stock should fall into the residuary estate, and that in case an invalid suspension of absolute ownership results from one part of the testator's scheme, that part is separable from his main scheme, and that the capital stock must be distributed among the beneficiaries named in the thirty-third clause, or failing that, as in case of intestacy. Whether any of these questions of construction were present to the mind of the plaintiff when he accepted the $33,000 and upwards which were paid him in satisfaction of his interest under the residuary clause and he gave his release in full therefor, the evidence does not inform us. His learned counsel now contends that they were not, and that the release was given and all his acts and declarations showing his own support of the will and encouragement of other beneficiaries to observe its terms, were the natural result of his ignorance of

his rights under it. Thus the learned counsel deduces an inference of fact. Under all the circumstances, we think it was competent for the Appellate Division to draw the opposite inference. That court might have found within the evidence that his release covered all his claim, present and prospective, to the residuary estate, and that he so intended it; that it was not without valuable consideration, and that there were family considerations as well as a sequence of his acts in support of the will tending to uphold it, making his present claim to a further residuary interest, if successful, most unjust and disastrous to such of his kindred as would thereby be disinherited; who, under the decree of the trial court, are adjudged to have received for years, without legal right, five per centum of the income upon the shares of stock allotted to them by the testator, and the executors are granted a recovery against each one of them for the sum he or she has thus severally received. And the executors are adjudged to pay into the residuary estate the amount of the dividends they have severally received upon the stock under the terms of the will in excess of the five per centum, less their commissions and reasonable charges. And yet the plaintiff assented for about four years to such disposition of the income.

This leads to an affirmance of the judgment of reversal, but, as upon a new trial the plaintiff might make a different case upon the equities, it is doubtful whether the Appellate Division should have directed final judgment against him. We, therefore, proceed to the question of the validity of the thirty-third clause.

We may test its validity by examining the provision by which the testator gives and bequeaths the 4,000 shares of corporate stock "to his executors and trustees in trust, to be managed by them until January 1, 1904, as follows," and the following subdivisions, A, B, C and D, in which he severally directs the management of the one-fourth part thereof "to and for the benefit" of the several beneficiaries designated in each subdivision, with directions for the disposition of the income and ultimate payment of the *corpus* of the fund. There

are no difficulties in subdivisions A, B and C which are not present in subdivision D, and we, therefore, examine that subdivision.

The question is whether the testator has thus provided that the absolute ownership of the 1,000 shares, disposed of in subdivision D, shall be suspended until January 1, 1904, and thus for a period not measurable by two designated or ascertainable lives in being at the death of the testator. The Revised Statutes prohibit the suspension of the absolute ownership of personal property for a longer period than during the continuance and until the termination of not more than two lives in being at the death of the testator. (1 R. S. 773, sec. 1.) In other respects limitations of future or contingent interests in personal property are subject to the rules prescribed in the first chapter of the second part of the Revised Statutes. (Ib. sec. 2.) If it must be held that the testator has so provided for a suspension thus prohibited, then the thirty-third clause is void. If it may be held consistently with all the terms of the will that he has not so provided, but that the suspension of absolute ownership does not and cannot extend beyond the life of William Steinway, but provides that upon his death before 1904 (an event which has occurred since the trial of this action), each of the equal proportions of the 1,000 shares become vested severally and absolutely in each of his children named and designated at the death of the testator, then, because the law favors the vesting of estates, and such permissible construction as will save and not destroy the will, it should be so held. It is settled law that the absolute ownership is suspended in one of two ways, either by the creation of future estates vesting upon the occurrence of some future and contingent event, or by the creation of a trust which vests the estate in trustees. (*Smith* v. *Edwards*, 88 N. Y. 93; *Everitt* v. *Everitt*, 29 ib. 71.)

Passing for the present the question of a trust estate and assuming a direct bequest to each legatee, we may concede that the absolute ownership of the 1,000 shares mentioned in subdivision D was suspended during the life of William Stein-

way, and since at the death of the testator it was uncertain whether William would die before 1904, that the future estates given to William's children were contingent. Following the rule as to future estates in land, as we must (1 R. S. 773, sec. 2), these future estates would remain contingent, "whilst the person to whom or the event upon which they are limited to take effect remains uncertain." (1 R. S. 723, sec. 13.) But no longer. When the contingency happened the precedent estate was determined, and the estate hitherto contingent became vested in his children "in equal proportions." (Ib. secs. 10, 13.) If any children were born to William Steinway after the death of the testator, the vesting in them of their shares was only postponed during the life of their father — that is, a single, designated life. (*Smith* v. *Edwards*, 88 N. Y. 92; *Matter of Brown*, 154 N. Y. 313; *Campbell* v. *Stokes*, 142 N. Y. 23.) Such after-born children would be let in. Was this corporate stock, or rather, each of these "equal proportions" of it, vested in each child in absolute ownership? . Withholding of payments seems to be withholding of possession and control, and thus of absolute ownership, and that seemed to be the view in *Converse* v. *Kellogg* (7 Barb. 596) and was shared by the learned trial judge; but it was said in *Bliven* v. *Seymour* (88 N. Y. 478) that whatever was said in *Converse* v. *Kellogg* in support of such an inference has no sanction in the decisions of this. court.

It is contended by the plaintiff that if any of William's children should die before 1904, his or her share would not vest in his or her executors or administrators, but in his or her heirs, because the direction to the trustees is to pay on the 1st day of January, 1904, in case of the prior death of William "to his said children  *  *  *  or their heirs, in equal proportions the said shares or the proceeds thereof to have and to hold to him, her or them, his, her or their heirs or assigns forever." The words "or their heirs" are usually words of limitation and not of substitution and must be so construed unless the will clearly imports their use in a substi-

tutionary sense. As we must as to future estates in personal property follow the rules as to future estates in land, we may deny to the word "heirs" any more substitutionary force than it has in devises of estates in land. That would here give the word the meaning of "next of kin." (*Tillman v. Davis*, 95 N. Y. 17.) This will negatives the idea that these words were used in a substitutionary sense, but supports the conclusion that they were used as words of limitation and especially with the purpose to vest the absolute ownership of the legacy in each child of William Steinway in case of the latter's death before 1904, irrespective of the child's living at that date. Thus the devises and bequests to eighteen different devisees and legatees named in eighteen several clauses of the will previous to the thirty-third clause, are severally made in case "he (or she) survive me," and the thirty-fifth clause provides: "In case any one of the legatees * * * shall not be living at the time of my death, his or her share or legacy shall form part of and pass into the bulk of my estate. This, however, shall not affect in any way the distribution of my shares in the Steinway & Sons' corporation of New York as provided for in the thirty-third clause of this my last will and testament." Following out the purpose thus expressed as to the shares disposed of in the thirty-third clause, the testator, manifestly *ex industria*, meant by his first use of the words "or their heirs"— an obscure expression, taken collectively — and then by repeating them distributively with the addition "or assigns forever," to emphasize the absoluteness of his final gift to the children of William Steinway, and to exclude all doubt of its being to them "forever." Thus the absolute ownership was not suspended beyond two lives in being at the testator's death, but only for one life.

We have thus far assumed that the contingent estates were given to the children of William Steinway as tenants in common, and not as joint tenants. Tenancy in common in such cases is the statutory rule, unless the will expressly declares a joint tenancy. (1 R. S. 727, sec. 44.) Here it does not so declare, but the import of the words employed is that each one

of William's children is to take both income and principal in equal proportions, and by that the testator meant that each one should take what he intended to give him, separately and solely for himself or herself. No survivorship or accumulation is mentioned. This court has steadily refused to infer a joint tenancy, in the absence of words expressly intended to declare it. (*Stevenson* v. *Lesley*, 70 N. Y. 512.) For the purposes of management only, the whole fund is treated as a single fund; for the purposes of his several gifts to the several legatees each " equal proportional part " is treated as separate and distinct from every other. To the mind of the testator the shares of capital stock were tangible things, as separable in their nature as if each were an ingot of gold of like value. The corporation, and not the trustees under the will, would make the income, and there would be no occasion to touch the certificates representing the corporate stock until 1904. By directing its division the testator substantially accomplished it. ( *Wells* v. *Wells*, 88 N. Y. 323; *Savage* v. *Burnham*, 17 N. Y. 571.) If the several legacies were given to each legatee in severalty, at the death of the testator, the time of payment alone being postponed until 1904, and the whole income accruing upon each legacy also given to each legatee to be paid to him annually in the meantime, then each legatee became, at the death of the testator, the absolute owner of the *corpus* of his or her legacy and of its full beneficial use, and thus of the whole of it, except as suspended for the life of William Steinway — a suspension permitted by the statute. (*Phelps* v. *Pond*, 23 N. Y. 69 ; *Woodgate* v. *Fleet*, 64 ib. 566.)

Did the testator intend to postpone the vesting of the legacies until 1904, or simply the payment of the *corpus* of them? If the foregoing views are correct, then the case is substantially brought to the same conditions as exist in the leading case of *Warner* v. *Durant* (76 N. Y. 133), greatly relied upon by the plaintiff. There the bequest was in form to the executors of an invested fund of $250,000 which the testator directed his executors to keep invested and to pay, for five years from the first of January after his death, interest at the

rate of seven per centum per annum upon various specified amounts thereof to various persons named, among whom was Oliver Blush, to whom he directed such payment of interest upon $15,000, and that sum to him at the end of said five years. Blush died before the day of payment arrived, and the question was whether the legacy vested in him at the testator's death. If not, it lapsed. The court held that it was vested. To do this the court had to find in the will itself, notwithstanding the formal gift to the executors to hold the fund in trust for five years, and the absence of any words of gift to Blush, except the direction to pay him the fund at the end of five years, and the seven per centum per annum thereon in the meantime, that the testator intended the gift to be absolute and the time of payment only postponed, thus making the gift as of the time of the testator's death, but deferring its payment for five years.

The court found the intention to make the gift absolute as of the time of the testator's death, because (1) the gift was by the will itself at once severed from the general estate for the benefit of the legatee. That circumstance exists in the will before us. (2) During the five years in which the payment of the legacy was deferred, the interest upon it was to be paid to the legatee, and, therefore, since the testator intended that the legatee should have the whole fund and all its income, he actually gave him at the outset the whole of it, notwithstanding that he interposed the trustees as intermediate and final paymasters. Thus, the payment of the whole interest or income of the legacy pending the delay in payment of the principal is essential to the immediate vesting of the legacy. The learned counsel for the plaintiff insists that the will before us fails to direct such payment, and that, therefore, the legacies were not immediately vested. We concede that the question is a vital one. It is said in *Smith* v. *Edwards* (88 N. Y. 92) that if any part of the interest is diverted to purposes other than the benefit of the legatees, that is treating the principal as not belonging to them, and *Warner* v. *Durant* is to the same effect. (See, also, *Delafield* v. *Shipman*, 103 N. Y. 463.)

The direction in each of the four subdivisions of the thirty-third clause is, that the executors pay to the legatees, "in equal proportions, an annual sum representing an annual income of five per centum on and from such shares (of corporate stock). * * * The excess of the annual income of such shares, over and above said five per centum, shall be retained by my executors and trustees as their compensation for the management of such shares." What this annual income would be was, of course, unknown to the testator. It subsequently proved to be from eighteen to twenty per centum per annum, until about the time this action was commenced. But whatever it might prove to be, it was "on and from such shares," and the excess over five per centum was not given by the testator to his trustees as a legacy or in diminution of the several legacies to the named legatees, nor retained in or for the benefit of the estate, but "as their compensation for the management of such shares" of capital stock. We must treat it as the testator did, as compensation for their management, for the benefit of the legatees, and, therefore, not diverted to other purposes. So treated, the five per centum per annum was the whole net income of the *corpus* of the legacies. The objection is insisted upon that the five per centum is not income, but a sum representing it, and that unless it is paid as income *eo nomine*, it does not meet the requirements of the rule. In *Warner* v. *Durant* the direction was to pay the legatees seven per centum interest, not expressed as the exact or the whole interest that the fund produced. The circumstance did not escape notice. The court held that the payment of "an amount equal to all which it is capable of yielding, or *may be expected in legal* methods to yield," would suffice. In *Smith* v. *Edwards* some expressions of the learned judge who delivered the opinion of the court seem to imply that payment of the interest or income should be directed *eo nomine*, following the rule stated in *Watson* v. *Hayes* (5 Mylne & Cr. 125), but in *Smith* v. *Edwards* the testator directed the application of the income to various purposes other than payment to the

legatees, and thus failed to direct the payment to them of the whole *eo nomine* or otherwise. We are not constrained by authority to sacrifice substance to form.

The plaintiff invokes the rule that where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives. ( *Warner* v. *Durant, supra ; Smith* v. *Edwards, supra ; Delafield* v. *Shipman, supra ; Goebel* v. *Wolf,* 113 N. Y. 405.) But these and other cases show how rare it is that there is no other expression in the will indicating the time when the gift is to vest. If there are other expressions, all must be considered. (*Matter of Brown, supra.*) The rule is to aid in ascertaining the testator's intention, not in defeating it. (*Campbell* v. *Stokes, supra.*). It was said in *Smith* v. *Edwards* that the rule is a flexible one, and the way is open to explore the other terms and conditions of the will to ascertain whether they do import a present gift irrespective of the direction for payment. This we have already done.

What we have said practically disposes of any title in the trustees. The testator gave the management which he specially pointed out and limited to his trustees, but the property to be managed to his legatees. Everything the trustees are directed to do, they can do under a power as well as if they had absolute title in themselves. Where neither the statute nor the terms of the will require it, the trustees take nothing more than is necessary to accomplish the purposes of the testator. No statute requires the trustees to take title, even to support the contingent bequests to the the children of William Steinway. (1 R. S. 723, sec. 10.) It may be conceded that they have an administrative title, such as executors usually have to the personal property of their testator, for the purposes of administration, good against all the world except the beneficiaries, but as to them a mere aid and instrument to pass it forward to them in the due course of administration, as the law and the will appoints, free and clear of further needs or liens of the estate. In such cases the courts, for the

purpose of sustaining the will, construe an authority and duty conferred or imposed upon executors, where it is possible to do so, as a mere power in trust, although the duty imposed, or the authority conferred, may require that the executors shall have control, possession and actual management of the estate. (*Robert* v. *Corning*, 89 N. Y. 237; *Downing* v. *Marshall*, 23 N. Y. 366; *Post* v. *Hover*, 33 N. Y. 593; *Tucker* v. *Tucker*, 5 N. Y. 408.)

We think these trustees took no title, but only a power in trust, and that the several legacies vested severally in the several legatees in absolute ownership within the period measurable by less than two designated lives in being at the death of the testator.

The judgment should be affirmed, with costs to the respondents, payable out of the income of the fund.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, CULLEN and WERNER, JJ., concur.

Judgment affirmed. _____