In re CONGER'S WILL.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. WILLS—CONSTRUCTION AS CREATING TRUST—PERPETUITIES.

Testator bequeathed the income of certain stock to his wife and daughter, and to the survivor of them, for life, the income to be paid over to them by his executors. After their death the income of such stock was to go to his son-in-law for life, should he survive them, and after the death of all three the stock was given to various legatees. The three members of his family were named as executors, and after their death the appointment of an "executor or trustee" for the purpose of carrying out the "trusts and bequests" was directed. *Held,* that no trust was created in the executors, but a mere power in trust, so that in that respect there was no violation of Laws 1897, c. 417, § 2, providing that the absolute ownership of personal property shall not be suspended by any limitation or condition in a will for a longer period than during the continuance of two lives in being.

2. SAME—CONSTRUCTION—VESTED REMAINDER—PERPETUITIES.

Testator bequeathed the income of certain stock to his wife and daughter and to the survivor of them, for life, and further provided that "I give and bequeath" the income of said stock to my son-in-law for life "after the death of" my wife and daughter. Then followed a provision that, "after the death of" my wife, daughter, and son-in-law, "I give, devise and bequeath" said stock to certain legatees. *Held,* the words of gift being in the present tense, the stock vested in the remaindermen absolutely, the time of enjoyment only being postponed, until after the death of the life tenants, so that in that respect there was no violation of Laws 1897, c. 417, § 2, providing that the absolute ownership of personal property shall not be suspended by any limitation or condition in a will for a longer period than during the continuance of two lives in being.

3. SAME—PERPETUITIES—ABROGATION OF LIFE ESTATE.

Where a will creates three life estates in a fund, contrary to the provisions of Laws 1897. c. 417, § 2, providing that the absolute ownership of personal property shall not be suspended by any condition in a will for a longer period than two lives in being, the last life estate will be abrogated, and the remainder will be allowed to vest in the remaindermen.

4. SAME—CONSTRUCTION—TENANCY IN COMMON.

Testator bequeathed to his wife and daughter, and to the survivor of them, the use, for and during their natural lives, of certain stock, and directed that the income and interest thereof "be annually paid equally to my said wife and daughter during their joint lives, and the whole of said income to the survivor during her life after the death of the other." After the death of both, the use of the stock was to go to his son-in-law for life, with remainder over to other legatees. The statute against perpetuities was violated as to that half of the stock which belonged first

to the wife, then to the daughter as her survivor, and then to the son-in-law as survivor of both. *Held*, that the mother and daughter would be regarded as taking the stock in the first instance as tenants in common, their interest being divisible, and therefore the life estate of the son-in-law in that half of the stock which belonged to all three could be abrogated and the remainder allowed to vest.

Appeal from Surrogate's Court, Oneida county.

Judicial settlement of the accounts of Almon R. Eastman and another, as executors of the will of Tracey W. Conger, deceased. From the decree of final settlement, Almon R. Eastman and another, as executors and individually, appeal. Affirmed.

The respondents are various persons and corporations named as and claiming to be legatees in remainder of certain property under said will. The decree in question, in addition to settling the accounts of said executors, construed certain provisions in said will claimed by appellants to be void.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

John E. Smith and Joseph Mason, for appellants.

Irving H. Palmer, for respondents Jones and others.

C. Lansing Jones, for respondent Home for Aged Men of Utica, N. Y.

John H. Murray, for respondents Conger and others.

S. M. Lindsley, for respondents Trustees of Masonic Home.

HISCOCK, J. The question presented upon this appeal which we shall deem it necessary to consider is whether certain provisions in the will of Tracey W. Conger which attempted to dispose of certain shares · of stock are illegal and void because they offend against the law that in the case of a will "the absolute ownership of personal property shall not be suspended by any limitation or condition * * * for a longer period than during the continuance and until the termination of * * * not more than two lives in being at the death of the testator." Laws 1897, c. 417, § 2.

It is contended by · the appellants that the provisions in question and to be construed did suspend such ownership for three lives in being at the death of the testator, and that therefore they come within the prohibition of the statute. The learned Surrogate has found against this contention and in favor of the respondents—who, if it prevailed, would be deprived of their legacies—and we have reached the conclusion that his decision should be affirmed.

The testator, Tracey W. Conger, left him surviving his wife, Susan Conger, now deceased, and his daughter and son-in-law, Cordelia C. and Almon R. Eastman, who are the appellants here. After certain other clauses, his will contained the following provisions, which have given rise to the controversy here presented:

"Third: I give, devise and bequeath unto my said wife, Susan Conger, and my said daughter, Cordelia Eastman, and to the survivor of them, the use for and during their natural lives, of Two Hundred Shares of the stock of the Utica, Chenango and Susquehanna Valley Railway Company, now owned by me, and I order and direct that such number of shares of said stock be kept by my said Executors, and the income and interest thereof be annually paid

equally to my said wife and daughter during their joint lives, and the whole of said income to the survivor during her natural life after the death of the other.

"And in case said Almon R. Eastman shall survive both my said wife and daughter, I give, devise and bequeath the use, occupation, interest and income * * * of said stock of said Utica, Chenango and Susquehanna Valley Railroad Company to said Eastman after the death of my said wife and daughter, for and during the period of his natural life and to be thereafter disposed of as herein provided."

"Seventh: After the death of my said wife, Susan Conger, and my said daughter, Cordelia Eastman, and of said Almon R. Eastman, I give, devise and bequeath unto the Board of Education of the Waterville Union School and Academy, of Waterville, N. Y., Forty shares of stock of the Utica, Chenango and Susquehanna Valley Railroad Company, the use whereof is hereinbefore given to the three persons above named, in trust however," etc.

There then follow several other clauses patterned substantially after the one last quoted, and in and by which the testator, "after the death" of his said wife and daughter and said Almon R. Eastman, gives, devises, and bequeaths the balance of said 200 shares of stock in various lots respectively to various legatees named.

By the first clause of his will he appoints the three members of his family already named, and the survivors or survivor of them, "executors" of such last will and testament. Subsequently in his will he refers to them as executors, but the final clause contains this provision: "And for the purpose of having the trusts and bequests hereby made and created, properly carried out and paid, after the death of all my said Executors, I hereby authorize and empower and direct," etc., there following a provision for the designation of some proper and competent person to act as "Executor or Trustee." There are no provisions in said will which create a trust, unless those already referred to do so.

It is well settled that the absolute ownership of property is suspended in one of two ways—either by the creation of future estates vesting upon the occurrence of some future and contingent event, or by the creation of a trust which vests the estate in trustees. Steinway v. Steinway, 163 N. Y. 183, 194, 57 N. E. 312.

A will under which the unconditional and unincumbered ownership of personal property is suspended upon a contingency not to occur until after the expiration of two lives in being offends against the statute. Williams v. Lande, 74 Hun, 425, 26 N. Y. Supp. 703.

A trust created by will is void where a trust term is created which is to continue beyond the allotted time, and during which a sale by the trustee would be in contravention of the trust. Robert v. Corning et al., 89 N. Y. 226.

It is urged in behalf of the appellants in this case that, by the provisions of the will to which we have referred, the persons named as executors took the stock in question as trustees upon an express trust to pay over the income during the lives of the wife, daughter, and son-in-law, and that upon the death of the last one of the three, and not until then, the title was to pass to the various other persons named as legatees; that thereby a trust was created which expressly or by implication illegally forbade the absolute disposition of this

property for three lives, and prevented the vesting of the absolute ownership until the expiration thereof.

It must, of course, be conceded that, if appellants' claims are correct with reference to the creation of such a trust, and such suspension of the final vesting of the unconditional title, their conclusions of law based thereon must be affirmed. We are, however, unable to agree with their premises, and shall take up first the consideration of the question whether any trust whatever in relation to this property was created. In doing so, it is not only proper, but obligatory, that we should keep in mind certain well-defined elementary rules which bind us in the construction of this will.

In the equitable construction of wills there is no magic in particular words. Technical language and phrases may be so appropriately and forcefully used as unequivocally to lead to certain interpretations and conclusions. It is, however, the duty of the court to scan the entire instrument, and deduce therefrom the intention of the testator. Tobias v. Ketchum, 32 N. Y. 319, 327.

Where upon such examination the language of a will is capable of two constructions, one of which will be valid and the other of which will render the will illegal, the former interpretation must prevail. Burke v. Valentine, 52 Barb. 412, 425.

Where a trust estate is not conclusively created by direct words in a will, but such construction is permissible from the language, it will be the duty of the court not to adopt such interpretation when the trust raised from the general language and apparent intention would be invalid, for there is no such anomaly in the law as a trust raised by construction only to be destroyed in the moment of its creation. Smith v. Edwards, 88 N. Y. 92.

If the creation of a trust estate would by its terms cause an illegal suspension, it would be utterly void, and must be expunged, if possible, from the dispositions of the will. Everitt v. Everitt, 29 N. Y. 39, 79.

When, in the light of these general principles, we come to the decision of the question whether a trust was created by this will which, if created as claimed by appellants, would concededly be void, we feel quite justified in holding that none was so framed.

It will be noticed at the outset that the bequests covering the stock in question are all directly to the proposed beneficiaries. There is no bequest in terms to anybody in trust for them, but a simple and direct gift, first to the life tenants, and then to the legatees in remainder. Except for what seems to us to be a chance expression used by the testator at the end of his will, the persons named to administer upon his estate and upon this stock are denominated simply and solely "executors," and not "trustees." No power is conferred upon them to change this particular fund by selling, altering, or reinvesting the same. The only duty with which they are charged is embraced in the language, "that such number of shares of said stock be kept by my said executors and the income and interest thereof be annually paid," etc. The duties imposed by this charge upon them become of even less than ordinary significance for the purpose of creating a trust when we remember that the persons who are to keep this stock are the same ones who are to enjoy its income during life.

Passing over the contention made by respondents, that the same persons could not be trustees and beneficiaries under this will as claimed by appellants (Rose v. Hatch et al., 125 N. Y. 427, 432, 26 N. E. 467), we do necessarily perceive that the same persons are given the possession of the stock and the income thereof for life, and that the only duty in addition thereto imposed upon them is to pass the property along to their successors. There is no duty to be discharged which requires the creation of a trust. The provision made in the fifteenth clause of the will for the designation, in case of death of his "Executors," of some person to act as "Executor or Trustee for the purpose of having the trust or bequests" made and created properly carried out, as already indicated, we do not think of much importance, certainly not of sufficient importance to overcome the other features of the will already referred to. Apparently the testator used this latter language as a matter of precaution, and without much accuracy, to cover a trust if he had created one, and without any very definite idea whether he had or not.

Where all of the powers and duties conferred and imposed under a will can be discharged by executors under a mere power in trust, the courts will decline to raise by construction a trust, and invest the executors or trustees with the title to property. Steinway v. Steinway, 163 N. Y. 183, 200, 57 N. E. 312; Smith v. Edwards, 88 N. Y. 92, 103; Burke v. Valentine, 52 Barb. 412, 425; Martin v. Martin, 43 Barb. 172.

The case of Steinway v. Steinway, supra, upon the facts therein involved, lays down principles which seem to us to amply cover the question now under consideration in this case. In that case the testator gave and bequeathed certain shares of stock to his "executors and trustees * * * in trust, to be managed by them until the first day of January in the year 1904," etc. It was claimed that this clause created a trust which involved the suspension of absolute ownership for a definite number of years, which might be longer than the period allowed by law. It will be noted that express terms indicating an intention to create a trust were used which were far stronger than those employed in the present will. The court, however, found that the title to the property passed to the beneficiaries, and not to the trustees, and that no trust was created. In enunciating this conclusion, the court employed language which we think is pertinent and controlling here. It said:

"The testator gave the management, which he specially pointed out and limited, to his trustees, but the property to be managed to his legatees. Everything the trustees are directed to do, they can do under a power as well as if they had absolute title in themselves. Where neither the statute nor the terms of the will require it, the trustees take nothing more than is necessary to accomplish the purposes of the testator. No statute requires the trustees to take title, even to support the contingent bequests to the children of William Steinway. * * * It may be conceded that they have an administrative title, such as executors usually have to the personal property of the testator, for the purposes of administration, good against all the world except the beneficiaries, but as to them a mere aid and instrument to pass it forward to them in the due course of administration, as the law and the will appoints, free and clear of further needs or liens of the estate. In such case the courts, for the purpose of sustaining the will, construe an authority and

duty conferred or imposed upon executors, where it is possible to do so, as a mere power in trust, although the duty imposed, or the authority conferred, may require that the executors shall have control, possession, and actual management of the estate. * * * We think these trustees took no title, but only a power in trust, and that the several legacies vested severally in the several legatees in absolute ownership."

It is, however, still further, in substance, urged by the appellants that, even if the trust feature be eliminated from this will, there was still a bequest contingent and future to the remaindermen of this stock which was based and limited upon three lives; that the title did not vest in the remaindermen until the expiration of the three lives; and that the fund was of a character so entire and single that there thereby resulted, as to the whole of it, a suspension of absolute ownership for three lives, and the remainders were void. Therefore, although we have held that the bequests of this property were to the legatees and not to the trustees, we are still left to consider, in view of this last contention of appellants, whether there was a present or future and contingent vesting of the title of the property in the legatees. Did the final title in remainder to this stock vest in the various legatees at the time the will took effect, the time of payment or of enjoyment only being postponed, or was such vesting of the title itself made future and contingent, and to take effect only upon the death of the three life tenants? This must be the decisive test.

If futurity is annexed to the substance of the gift, the vesting is suspended, but, if it appear to relate to the time of payment only, the legacy vests instanter. Everitt v. Everitt, 29 N. Y. 39, 74; Goebel v. Wolf, 113 N. Y. 412, 21 N. E. 388, 10 Am. St. Rep. 464.

Where the gift is absolute, and the time of payment only is postponed, the gift is not suspended, but vests at once, and there is no suspension of the ownership. Smith v. Edwards, 88 N. Y. 92, 103.

Where the gift is to be severed instanter from the general estate for the benefit of the legatee, and in the meantime the interest is to be paid to him, this is indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait only for the payment until the day fixed.

The question is, was there a present gift or any language or provision from which such immediate gift can be inferred?

The courts are always to encourage a construction which leans to the vesting of legacies, and seek diligently for evidence of such purpose and intention. Smith v. Edwards, supra.

It seems to us that the language employed by the testator with reference to the remaindermen in this stock authorizes the construction that there was by his will a present and absolute gift and bequest to them of the title, the time of enjoyment simply being postponed until the expiration of the life estates. The words of gift employed by the testator are in the present in each instance—"I give, devise and bequeath unto," etc. The appellants, however, select certain words and phrases used in connection with these bequests from which they ask us to infer that the same were not to take effect at all until after the death of the last life tenant. For instance, in the third clause, our attention is called to the fact that

Almon R. Eastman is to have the income of the stock "after" the death of the testator's wife and daughter, and that said stock is to be "thereafter disposed of as herein provided." They also refer to the fact that each clause of bequest to a remainderman reads: "After the death of my said wife * * * of my said daughter * * * and of said Almon R. Eastman, I give, devise and bequeath," etc. This mere arrangement of words, however, is not, in our opinion, sufficient to be controlling upon this question. The intent of the testator is perfectly plain. He proposed that the three members of his family designated should have enjoyment of this stock in the manner denoted during life, and that the various legatees named as remaindermen should have the stock absolutely and forever, subject to these life estates.

We do not believe that we are warranted in destroying and subverting this general scheme by attaching too much importance to the order in which certain words are written in the will. If the testator had said, "I give, devise, and bequeath unto the legatees named certain shares of stock, such bequest to take effect in enjoyment after the death of my life tenants," there could be no question about the meaning or validity of the clause. We think it requires no particular straining to hold that when he said, "after the death" of said life tenants "I give, devise and bequeath" unto the same persons, he meant the same thing, namely, a present, immediate bequest and gift of the property, subject only to delay in payment and enjoyment until after the death of those who had a prior right to enjoyment as life tenants. The vesting of title was to take effect immediately; the actual division and delivery of the certificates of stock was to occur in the future.

The Surrogate found, and it seems to be substantially conceded by respondents, that the testator created three life estates in half of this stock. He provided for payment of the income in equal shares to the wife and daughter while both were alive, and for payment of the whole income to whichever of the two survived, and for payment of the income to the son-in-law if he survived the two. Thus, as to the half of which the income was payable first to the mother (now deceased), then to the daughter, then to the son-in-law, there was an excess in life estates of one. The respondents, however, insist, and the Surrogate again has found with their contention, that the wife and daughter took as tenants in common; that their respective shares could therefore be regarded as separate; and that this third estate, as to one-half, could be cut out, and the remainder thus allowed to take effect as to each share at the expiration of two lives.

It is the rule that the creation of three life estates in a fund, in violation of law, will not render a will void, but the effect will be to abrogate the last life estate and to allow the remainder to vest. Matter of Ryder, 41 App. Div. 247, 58 N. Y. Supp. 635.

The case cited by appellants holding otherwise upon this question involved the case of a trust estate where the trust was held void, and is therefore inapplicable. La Farge v. Brown, 31 App. Div. 542, 52 N. Y. Supp. 93.

It is, however, as already suggested, urged by the appellants that the bequest to the wife and daughter of this property was joint; that the subject of the bequest constituted an entire, inseparable, indivisible fund; and that, therefore, it is not possible to abrogate a life estate as to one moiety thereof, but that the three estates apply to and cover the entire body of stock.

Again, the general rules of construction are opposed to appellants' contention, and impose upon us the duty of sustaining respondents' position, if possible.

Tenancy in common is the statutory rule, unless the will expressly declares a joint tenancy. The courts have refused to infer a joint tenancy in the absence of words expressly intended to declare it. They will, for the purposes of management, only treat the subject of the bequest as a whole or single fund. For the purpose of sustaining the provisions of the will, they will, if possible, treat the gifts to the several legatees as separate and distinct from each other. Steinway v. Steinway, supra; Stevenson v. Lesley, 70 N. Y. 512; Smith v. Edwards, supra.

The language largely decisive of this branch of the case is found in the third clause, where the testator devises to his wife and daughter, and to the survivor of them, the use for and during their natural lives of the income and interest upon this stock, to "be annually paid equally to my said wife and daughter during their joint lives, and the whole of said income to the survivor during her natural life after the death of the other." The property covered by this bequest was of one kind. Every part of it would produce a uniform income. The case, therefore, is different from some of those cited by the appellants where the bequest dealt with the residuary estate composed of different kinds of property, which respectively might produce different amounts of income and embarrass the separation of the fund into separate proportional parts. Here, when the testator said that an equal part of the income of this stock was to be paid to each, his wife and daughter while they were both alive, and the whole of it to whichever one of them might survive the other, he used language sufficient to create separate interests or shares. When he provided for the division into equal parts of the income of this stock while both of the objects of his bounty lived, he did all that was necessary to create two separate funds. The income of the stock, for the purpose of this bequest, was the fund to be distributed, and divided. That could easily be done without actually separating the stock into two parts.

The language, under the authorities to which we have referred, was entirely inadequate to overcome the rule and assumption in favor of a tenancy in common by the wife and daughter, and to establish in the place thereof a joint tenancy. This being so, it was perfectly feasible to save the provision as a whole by abrogating the third life estate which was created as to one-half of the stock.

The cases of Colton et al. v. Fox et al., 67 N. Y. 348, of Ward v. Ward, 105 N. Y. 68, 11 N. E. 373; and of La Farge v. Brown, 31 App. Div. 542, 52 N. Y. Supp. 93, are by appellants especially referred to and relied upon as sustaining their position. It will, however, upon examination be observed that each of those cases is distinguished from

this one by the fact that the provisions there under attack as unduly suspending the ownership of property vested the title thereof in trustees under the terms of a trust which necessarily forbade the final and absolute vesting of the title for an illegal period. No vesting of the title within the period fixed by law could occur without violating the terms of the trust, and, the property being held in its entirety upon a trust, no life estate could be annulled, as we have held it was proper to do in the case at bar.

A few words may be said with reference to the form of the decree made by the Surrogate. His very concise opinion indicates very clearly his view that the title to the various lots of stock vested in the remaindermen upon the death of the testator, subject to a postponement only of the enjoyment. The decree, as pointed out by the appellants, at one point or another employs language which might indicate the view that the vesting of the title and ownership in the remaindermen did not take place until the expiration of the second life estate. We think, however, that the entire decree, considered together in the light of the opinion, may be regarded as holding the views adopted in this opinion. Said decree further provides that as to the half of the stock in which life estates are provided for the wife and daughter, and the third one in favor of the son-in-law cut out, the use and enjoyment only of the stock shall vest in the remaindermen upon the death of the daughter. It is unnecessary to consider whether, instead of this, it should not have been provided that the half portion of the stock itself which constitutes the basis of these life estates should pass to the remaindermen at the time mentioned. The respondents have not found any fault with this provision, and it does not in any way diminish or injure the rights of the appellants. We think the decree should be affirmed, with costs.

Decree of Surrogate's Court affirmed, with costs. All concur.