(43 Misc. Rep. 188.)

### SOLLEY et al. v. WESTCOTT et al.

(Supreme Court, Trial Term, Otsego County. March, 1904.)

1. WILLS—CREATION OF TRUST—ESTATE OF BENEFICIARY.
    Where a will creates a trust, accompanied by a discretionary power to the life beneficiary of the income to use such part of the principal as she may demand or need for her own use or that of her children, she has an absolute ownership of the principal, if she so elects, and the trust is voidable.

Action by Mary Houston Solley and Fred Palmer Solley, as executors of, and trustees under, the will of Robert F. Westcott, deceased, and others, against Robert E. Westcott and others, to establish the validity of the probate of the will.

Winthrop & Stimson, for plaintiffs.
E. H. Benn (E. Luther Hamilton, of counsel), for defendants.

FORBES, J. This is an action brought under section 2653a, Code Civ. Proc., to establish the validity of the probate of the last will and testament, and codicils thereof, of Robert F. Westcott, deceased. The original will is dated December 28, 1892. The codicils are dated, respectively, December 18, 1896, and October 29, 1897.

Robert F. Westcott died on the 19th day of July, 1901, leaving real estate and personal property of the value of about $250,000. Mary Houston Solley and Fred Palmer Solley were duly appointed and quali-

fied as trustees, etc., under said will. Robert F. Westcott left, him surviving, Margaret J. Westcott, his widow; Mary Houston Solley and Corinne Westcott Conquest, daughters; and Robert E. Westcott, a son. All of the legatees and beneficiaries interested in said estate are made parties to this action.

The contest arises over the fourth provision of the will, dated December 28, 1892, and under the second provision of the first codicil, dated December 18, 1896. The will and codicils were duly admitted to probate by and before the surrogate of Otsego county, and letters testamentary were duly issued to Fred P. Solley and Mary Houston Solley on the 22d day of October, 1901. The second codicil is dated the 29th day of October, 1897. The first clause of this codicil revokes a portion of the last provision of the first codicil, nominating Oberlin M. Carter as an executor of said will. The second clause of this codicil in all respects ratifies and confirms the last will and testament, and the prior codicil thereto.

Under the original will, certain specific legacies are given to the widow of the testator. The third and fourth provisions thereof read as follows:

"Third. All the rest, residue and remainder of all property belonging to me at my death I give and devise to my wife Margaret J. Westcott, my daughter Mary Houston Westcott and Frederick Palmer Solley, the survivors and survivor of them, as trustees, upon the following trust, namely,—to manage the same, to collect the rents, issues and profits thereof and to pay over said rents, issues and profits to my wife quarterly during her life, and to pay her such portion of the principal of said rest, residue and remainder as she in her discretion may demand or may deem needful either for her own use or for the use of any of my children or her child.

"Fourth. Upon the death of my wife I give said rest, residue and remainder or so much as shall remain of the same, to such of my three children, Robert Estling Westcott, Mary Houston Westcott, and Mrs. Charles Conquest, as shall survive my wife, equally, share and share alike, but if either of said three children·die before my wife leaving a child or children surviving my wife, the share of the one so dying I give to such grandchild or children."

It will be seen that the then wife, now widow, Margaret J. Westcott, was named as an executrix and trustee with the other plaintiffs in this action. See Exhibit A, which is made a part of the complaint. Mary Houston Westcott subsequently married Fred P. Solley.

The second clause of the first codicil reads as follows:

" "Second. In consideration of the fact that I have heretofore during my lifetime given to my son Robert Estling Westcott, the business of the Westcott Express Company, and other interests of much value, together with various sums of money, from all of'which he has amassed a fortune, and as I am of the opinion that he has received a just proportion of my estate, I hereby will and declare that he shall receive no portion of my estate either real or personal, save the sum of One Hundred Dollars, which I hereby give, devise and bequeath to him, and I hereby wholly revoke paragraph 'Fourth' of my said will and I hereby direct that the following shall be substituted in the stead and place thereof, and made a part of said will viz."

Then follows the fourth clause in said codicil, providing for a division of the residue and remainder of said estate, after the death of the widow—one-half thereof to Mary Houston Solley, should she survive the widow, and in case of Mary's death the same is to go to her descendants equally. The other one-half of the residue and remainder

of said estate is devised to the executors of said testator in trust for the testator's daughter Mrs. Charles Conquest.

The answer of Robert E. Westcott puts in issue the validity of the second clause of the first codicil, and asks that it be declared null and void, and also prays that the original will, made December 28, 1892, be declared valid as the last will and testament of Robert F. Westcott, deceased. The defendant Thalia Millett, the daughter of Robert E. Westcott, also puts in issue the validity of that clause of the codicil of December 18, 1896, and asks for the affirmance of the provisions of the original will. Frederick Westcott Solley, Theodore Westcott Solley, Margaret Solley, Robert Folger Solley, Robert Folger Conquest, and Gladys Conquest, infants under the age of 21 years, grandchildren of the testator, appear, answer, and submit their rights and interests to the protection of the court. Upon the trial, so far as they could do so, these grandchildren asked that the last will and testament and the codicils be affirmed and established as the valid will and testament of the deceased.

This action was duly placed upon the calendar and brought to trial at a term of this court held in said county on the 19th day of November, 1903. A jury was impaneled to try the issues raised. At the close of the evidence each party asked for the direction of a verdict in its favor, and the case was finally submitted to the court.

The defendant claims it was the intention of the testator to divide his property equally among his three children, the survivor or survivors of them, and the descendants of those who died prior to the testator. Under the second clause of the first codicil, the defendant Robert E. Westcott claims that there was a mistake of fact, which, in law, amounts to a fraud or to a delusion on the part of the testator, which deprived the defendant of the devise and bequest in his favor of a portion of the rest, residue, and remainder of the testator's estate under the original will, in so far as said codicil states that the testator had given to said defendant the business of the Westcott Express Company, and certain other business interests and moneys, during the lifetime of the testator. It therefore becomes the duty of the court, under this contention, to give an interpretation and construction to the will and codicils of the deceased.

Robert F. Westcott was the founder of and established the business known as the Westcott Express Company, and a certain other enterprise known as the Produce Dispatch, in the business of transporting certain products to the New York City and certain New Jersey markets, with headquarters in New York City. Robert F. Westcott became a large majority owner and the manager of these enterprises from about the year 1869. He continued in the active operation, control, and establishment of said enterprises, and when said business was fully established he became the president and manager of what is now known as the Westcott Express Company. This situation continued down to about the year 1884 to 1886, when Robert F. retired from business, and his son, Robert E. Westcott, took his place as the president and manager of said concern, purchasing a large majority of the stock of said Westcott Express Company, and owning, at the time when he transferred the same to a new corporation thereafter formed, over 2,000 shares

of the 2,500 shares—the total stock of said concern—at the par value of $100 each, which he sold and transferred to said new corporation for the sum of $130,000 in cash, $140,000 in bond and mortgage security, and received 200 shares of the stock of said new concern, of which he took to himself about 160 shares, at the par value of $100 each. Upon this sale said Robert E. received about 85 per cent. of the consideration paid therefor. So that from the Westcott Express business alone the defendant Robert E. Westcott received about $200,000 in value from this line of the transportation business originally established by his father, Robert F. Westcott, begun when Robert E. was merely a boy. The evidence shows that Robert E. was taken into the express transportation business, in the office of the company, when he was something more than 19 years of age; was educated in the enterprise, probably drawing a salary at that time from the business, under the control and management of his father, down to the time when he took his father's place as president in said concern, and began to draw a salary in that capacity. Robert F. Westcott became the intimate friend of Cornelius and William H. Vanderbilt, using their railroad lines for transportation under contracts made between them, as the president of the New York Central & Hudson River Railroad Company and its lines, and with Samuel Sloane, as president of the Delaware, Lackawanna & Western Railroad Company and its lines; and his relations to these companies continued down to the time of his retirement from business, and Robert E. still continued the same business relations after he came into control of said properties. There is no evidence in the case which shows that Robert E. Westcott had any considerable amount of money or capital invested in the Produce Dispatch and Westcott Express Companies prior to the time when he began his service under the management and control of his father, Robert F. Westcott. Subsequently, from some of the same lines of the business enterprises so taken over and continued by said Robert E., he has amassed a fortune out of these enterprises, as the evidence shows, and has more than trebled for himself, in value, the amount of property left by his father's estate. This was practically the situation at the time the first codicil was made.

The construction of the second clause of said codicil revoking the fourth provision in said last will and testament must be examined for the purpose of seeing what was probably in the mind of Robert F. Westcott at the time he revoked that provision. The testator says:

"In consideration of the fact that I have heretofore during my lifetime given my son Robert Estling Westcott, the business of the Westcott Express Company, and other interests of much value, together with various sums of money, from all of which he has amassed a fortune, and as I am of opinion that he has received a just proportion of my estate, I hereby will and declare that he receive no portion of my estate either real or personal, save the sum of One Hundred Dollars."

It will be seen that Robert F., by this first codicil, does not say that he had given or transferred the stock in the business of the Westcott Express Company to his son, Robert E., but he does say emphatically that he has given to him, in effect, the business enterprise fostered, established, and made successful by the father, out of and from which the son, Robert E., has amassed a fortune; and this is probably naturally what the testator had in his own mind, with the comparatively limited

amount of his own estate, which by his will and codicils he has devoted to the care, support, and maintenance of his wife and of his two daughters; giving them, if now divided between them, only something more than $83,000 each. The father may not have had the business and executive abilities of the son, but he had struggled through up to the establishment of the Westcott Express enterprise, devoting his life to that service, and dragging along through those years at just about an even financial pace, so extending and perfecting the lines of the business as to make it extremely valuable as a business transaction and enterprise at the time he retired and turned the business over to his son. This seems to me to be the natural inference to be drawn from the evidence in this case. This view was probably carried into the first codicil, as an explanation why Robert E. ought not to receive an equal division of the estate, thereby lessening the bulk of the testator's small property, compared with that of his son's greater fortune, and in that manner curtail the income, and deprive the wife and daughters of the father of the use and benefit of that estate which he so thoughtfully and justly provided for their care and maintenance. Instead of this being a delusion on the part of Robert F., the evidence shows that it then was and now is a substantial fact. The interpretation of the word "business" must be regarded as meaning the establishment of the enterprise, its good will, its connection with transportation lines so established, which were valuable adjuncts, and almost a necessity for the culmination of final success to the son. That success ripened into a fortune for the son, upon the sale of the express company property, within two years after Robert E. became the president and manager of said concern.

I do not think, considering the provisions made in the third clause of the will, that it can be wisely inferred that it was ever the intention of the father that Robert E. should have an undivided equal share of the father's estate at the time of his death, since the language plainly indicates that Margaret J. Westcott, the widow, should have the almost absolute control and disposition, in her lifetime, of the entire estate. The language is so plain and so suggestive as to raise the presumption that she was to take the entire estate, in her discretion, and devote the income and the principal, if she pleased, for her own comfort, support, and maintenance, and, in her discretion, to advance and distribute the same before her death to any of her children who should need, in her judgment, any portion of the same, during her life, as she absolutely saw fit. The gift and devise over was securely based upon the contingency or contingencies provided for in the third clause of the original will.

It is a principle of law that, where a trust is imposed, coupled with the power and discretion on the part of the devisee or legatee to control, use, and dispose of the whole estate in her discretion, the devise or bequest becomes absolute. Real Property Law, § 79 (Laws 1896, p. 572, c. 547); Burke v. Valentine, 52 Barb. 412; Matter of Conger's Will, 81 App. Div. 493, 80 N. Y. Supp. 933; Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312. Since she can assert her right to the whole fund to the exclusion of any of the other devisees and legatees of the remainder, under those circumstances, creditors of the widow, should

she leave any of her debts or obligations unpaid, could seize upon the remainder to liquidate that indebtedness to themselves. The language of the will is inconsistent with the powers of a limited estate, and, in my judgment, the trust may be destroyed, and becomes void, or at least voidable. Wilson v. Van Epps, 38 Misc. Rep. 486, 77 N. Y. Supp. 980, and cases cited; Shaw v. English, 40 Misc. Rep. 37, 81 N. Y. Supp. 169; Mersereau v. Camp, 42 Misc. Rep. 253, 86 N. Y. Supp. 568.

If the slightest delusion could be spelled out of the language in the codicil as to the testator having given the business of the Westcott Express Company to his son, there certainly was no mistake of fact that out of and from that business, under his concededly shrewd business management, the son had amassed an ample fortune. This is the evidence upon the trial. At all events, it was the rational view taken by the father of the situation at the time the first codicil was made. And without fully knowing in detail just what he had in his mind, as shown by the language used in the entire clause, in my judgment it would be a monstrous proposition to destroy this provision in the first codicil, as that is affirmed by the provision in the second codicil, ratifying and affirming his will thus changed.

The presumption that the testator was sane, and was of a sound, disposing mind, must be sustained; and judgment is therefore ordered confirming and establishing the last will and testament of the said Robert F. Westcott, and each of the codicils thereto. In view of the financial condition of the devisees and legatees of the estate, as contrasted with the financial ability and resources of the defendant Robert E. Westcott, I think the costs and disbursements of this litigation should be charged upon the defendant Robert E. Westcott personally. A judgment and decree may be entered accordingly.

Judgment accordingly.